J. S50003/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JASON WOODALL, | : | No. 355 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 24, 2010,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0015796-2006

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JASON WOODALL, | : | No. 356 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, June 30, 2011,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0015787-2006

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 27, 2015**

Jason Woodall appeals ***nunc pro tunc*** from the judgments of sentence entered on March 24, 2010, and June 30, 2011, in the Allegheny County Court of Common Pleas; this court has ***sua sponte*** consolidated the appeals.  We affirm.

## FACTUAL & PROCEDURAL HISTORY -- No. 355 WDA 2013

Appellant was charged by criminal information No. CP-02-CR-0015787-2006 on December 29, 2006, with the following offenses that occurred on May 31, 2006 through June 1, 2006: Counts 1 & 2 -- possession with intent to deliver ("PWID") cocaine; Count 3 -- possession of cocaine; and the summary offense of driving while operating license suspended or revoked. Appellant was also charged at No. CP-02-CR-0015796-2006 for the following offenses which occurred on June 7, 2006: Count 1 -- PWID cocaine; Count 2 -- possession of cocaine; and the summary offense of driving while operating license suspended or revoked. Appellant proceeded to a jury trial in both cases on March 4, 2006.

The following facts were presented to the jury. Jerome Bauer was arrested in May of 2009 for driving under the influence, possession with intent to deliver, and possession of cocaine. For 20 years, Bauer owned a bar/restaurant on the South Side of Pittsburgh called "Jerome's." Bauer testified that he was told the charges against him would be reduced if he would make a deal to identify the person from whom he had purchased the drugs. (Notes of testimony, 3/4-5/09 at 32.) The charge of possession with intent to deliver, which carried a mandatory sentence, would be dropped; Bauer agreed to assist with the investigation. Bauer stated that for a year and a half he had purchased cocaine from appellant, whom he only knew as "Jay." (*Id.* at 32-33.) Bauer periodically purchased drugs from appellant,

and he would typically purchase one to three ounces at a time; "80 percent of the time [Bauer got] three." (***Id.*** at 33, 51.) He explained that the reason for the variation was that "it was $300 cheaper an ounce as well as not having the risk of meeting him somewhere." (***Id.*** at 33.) Bauer testified that the men usually met at his bar, outside by the car, or the McDonald's on Brownsville Road. Bauer stated that when they had previously met at the McDonald's, the transaction would occur in the men's room. (***Id.*** at 43.) Officer Scott Harding testified that based on the information Bauer provided, they investigated and determined that the person Bauer described as his dealer was Jason Woodall. (***Id.*** at 78-80.)

On May 31, 2006, at 1:30 p.m., Bauer placed a wiretapped telephone call to appellant to purchase four ounces of cocaine. (***Id.*** at 35, 83.) The conversation consisted of coded language with Bauer asking, "Are you good," which was his way of asking if appellant had the desired amount of cocaine. (***Id.*** at 44.) Appellant indicated that he did have the amount, and they agreed to meet at 4:00 p.m. at the bar Bauer owned. (***Id.*** at 45.) Police officers directed Bauer to place a follow-up call to receive an "extra one," which meant an extra ounce of cocaine. (***Id.*** at 84-85.)

The police proceeded to Jerome's bar to set up for the drug transaction. The bar and Bauer were searched.[1] (***Id.*** at 86, 120.) In the

---

[1] At trial, Bauer could not remember if he had been searched. (***Id.*** at 39, 58.)

basement, Officer Scott Harding fit Bauer with a body wire and gave him $3,600 for the transaction.[2] (*Id.*) Undercover detectives were positioned inside and outside the bar for surveillance, and Bauer was watched at all times. (*Id.* at 86.)

Appellant walked into the bar and made eye contact with Bauer. (*Id.* at 87.) Appellant then met Bauer in the game room, and they walked to an alcove between the kitchen and the bathroom where they exchanged $3,600 for cocaine.[3] (*Id.* at 122.) Officer Harding testified that he had an unobstructed view of the transaction of the currency and the drugs, which was a "sandwich size baggie, softball size, of a white powder later identified as cocaine." (*Id.* at 87, 127.) At this point, Hardy testified appellant left the bar and an undercover detective passed appellant at the door where he exited. (*Id.* at 87.)

Detective Ray Bonacci was also involved with this investigation and was present at the bar. (*Id.* at 147.) Detective Bonacci testified that he was seated at the bar and observed appellant walk into the bar and immediately meet with Bauer. (*Id.* at 148.) The men briefly met and appellant turned around, walked back out of the bar, jogged to his vehicle,

---

[2] Bauer told his employees Officer Harding was there to fix the ice machine in the basement. (*Id.* at 85.)

[3] Bauer testified he could not recall where the transaction occurred. At one point, he stated the transaction occurred in the bathroom; but he later testified that it might have occurred around the corner from the bathroom by the Golden Tee video game. (*Id.* at 59, 71.)

and left. (*Id.*) Detective Bonacci was 20 feet from where appellant and Bauer met. (*Id.*) However, he was not able to view the transaction, as there was a wall obstructing his view. (*Id.* at 149.) He did not move himself, as he did not want to interrupt the transaction. Three other officers who were present were also unable to view the transaction. Officers tasked with following appellant and conducting a traffic stop to verify his identity aborted this task as they did not want to jeopardize the investigation.

In the bar, officers recovered the cocaine from Bauer, removed the body wire, and searched him.[4] (*Id.* at 89.) The cocaine weighed 82.7 grams, which was one ounce short of the agreed upon amount. (*Id.* at 39, 90.) Consequently, Bauer was directed to place another wiretapped phone call to appellant regarding the shortage. (*Id.* at 39-40, 91.) Appellant agreed to meet Bauer later that evening at the Mt. Oliver McDonald's to provide the missing ounce of cocaine, as he believed he was followed from the parking lot of the bar. (*Id.* at 40, 61-62, 91.) Officers searched Bauer and his vehicle, fitted Bauer with a body wire, and proceeded to McDonald's to conduct surveillance. Appellant never arrived. (*Id.* at 41.)

Later that evening, Bauer called appellant and arranged to meet him on June 1, 2006, at the same McDonald's to get the ounce of cocaine.

---

[4] Harding testified that, at the time of trial, he did not have possession of the body recorder used on May 31st and he did not know what happened to it. (*Id.* at 129.)

Detective Bonacci was present when Bauer made the call, but he could not hear appellant's half of the exchange. (*Id.* at 159.) Bauer notified the officers about the transaction. On June 1, 2006, officers again searched Bauer and his vehicle, fitted Bauer with a body wire, and proceeded to the McDonald's to conduct surveillance. (*Id.* at 93-94, 140-141.)

When the undercover officers arrived, appellant's vehicle was already in the parking lot. (*Id.* at 196.) Officer Joseph Osinski, who was on the surveillance team, noted appellant's car was unoccupied, and he parked the undercover vehicle approximately two or three spaces from appellant's car. (*Id.*) Officer Hardy followed Bauer's vehicle into the McDonald's parking lot; Bauer was instructed to stay in his vehicle. (*Id.* at 94.) Bauer parked his vehicle in the space to the immediate left of appellant's vehicle. (*Id.* at 197.) Appellant exited the McDonald's and proceeded to the front passenger seat of Bauer's vehicle. (*Id.* at 94, 197.) While sitting in the car, appellant handed Bauer an ounce of cocaine. The officers could not see the transaction. After approximately two minutes, appellant exited the car and left the area. Bauer drove in the opposite direction and, after a short time, pulled over for the police to deactivate the body wire, search the vehicle, and retrieve the cocaine. (*Id.*) Several minutes passed before Bauer pulled over and Officer Harding got into his car. (*Id.* at 140.) Officer Harding testified that he searched both Bauer and his car before going into the

McDonald's and that he searched the car again after the meeting. (*Id.*) The contraband weighed 27.17 grams.

Thereafter, an arrest warrant was issued for appellant. On June 7, 2006, officers had Bauer make another recorded call to appellant and set up another transaction for four ounces at the same McDonald's. (*Id.* at 61.) Appellant did not answer the phone but called Bauer back and the meeting was planned. Officer Bonacci explained that he understood that appellant and Bauer always met in the bathroom at this McDonald's to conduct their transactions, which is why the officers set up near this location. (*Id.* at 167-168.) Bauer waited in a booth inside the McDonald's. (*Id.* at 43.) Appellant arrived and proceeded into the bathroom. (*Id.* at 100.) However, the undercover officers followed him into the bathroom and placed appellant under arrest. (*Id.* at 42, 100.) The officers found a "fairly large softball size of cocaine" in appellant's right front pocket and a piece of crack cocaine on the floor. (*Id.* at 101.)

Both parties stipulated to the contents of the crime lab report, which stated the drugs seized on May 31 and June 1, 2006, amounted to 82.7 grams of cocaine in one baggie and 27.17 grams in another. A bag from the June 7 incident weighed 111.2 grams, and the crack weighed 72 grams. Narcotics Detective Todd Naylor testified as an expert. He testified that it is common to see cocaine packaged for sale in sandwich baggies, gallon freezer bags, and similar storage bags. The detective opined

that the cocaine was possessed with intent to deliver.[5]  The Commonwealth also entered into evidence a CD containing recordings of the telephone intercepts between Bauer and appellant on May 31, June 1, and June 7, 2006; the recordings were authenticated and played for the jury.  (*Id.* at 106-109, 135-141, 317-325.)  The CD also contained an audio recording of the body wire intercept on June 1, 2006, which was also authenticated and played for the jury.

Appellant was convicted of all charges at No. CP-02-CR-0015796-2006 (June 7, 2006 events), and the trial court found him guilty of the summary offense; however, the jury was unable to reach a verdict at No. CP-02-CR-0015787-2006 concerning the events occurring on May 31, 2006 and June 1, 2006, and a mistrial was declared.  On March 24, 2010, the following sentence, in addition to fines, was imposed:  Count 1 -- 7 to 14 years' incarceration; Count 2 -- no further penalty; Count 3 -- 90 days' incarceration.

Appellant filed a post-sentence motion on April 5, 2010, alleging the evidence was insufficient and a motion requesting leave to amend.  (Docket #7.)  The trial court granted appellant permission to amend the

---

[5] After a mistrial was declared on March 5, 2009, as to the May 31, 2006 and June 1, 2006 transactions, appellant failed to appear for the retrial on June 4, 2009.  An arrest warrant was issued, and on July 18, 2009, appellant was arrested during a vehicle stop, at which time he gave a false name, Shaun Booker.  Eventually, appellant admitted to the officers that he provided a false name as he was a wanted person.

post-sentence motions. On May 7, 2010, new counsel, Eric A. Jobe, Esq., filed a post-sentence motion alleging the sentence was excessive and the jury's verdict was against the weight of the evidence. (Docket #10.) The motion was denied on September 8, 2010. Appellant filed a timely notice of appeal; however, it was dismissed on December 21, 2010, for failure to comply with Pa.R.A.P. 3517.

**FACTUAL & PROCEDURAL HISTORY -- No. 356 WDA 2013**

Meanwhile, Attorney Jobe filed a motion ***in limine*** on March 29, 2011, at No. 356 WDA 2013, seeking to preclude the Commonwealth from admitting evidence of appellant's flight after the mistrial. The motion also argued that the Commonwealth should be precluded from introducing evidence that appellant was previously convicted of PWID and possession of cocaine at No. CP-02-CR-0015796-2006 concerning the June 7, 2006 events. Following a hearing, the motion ***in limine*** was denied on March 31, 2011.

The Commonwealth essentially presented the same facts during appellant's jury trial held from March 31, 2011 through April 1, 2011. The following additional facts were established at the jury trial held from March 31, 2011 through April 1, 2011. Appellant testified and stated he had met Bauer through a friend and had known him for approximately a year and a half. (Notes of testimony, 3/31-4/1/11 at 245.) Appellant conceded that on May 31, 2006, he met with Bauer; however, he explained that he

went to the bar to purchase cocaine from Bauer and to collect money that Bauer owed him. (*Id.* at 233.) Appellant testified that he and Bauer went inside the bathroom where he purchased an ounce of cocaine from Bauer. (*Id.* at 243.) Bauer gave appellant some of the money he owed him from work appellant had done for him, in addition to some cocaine. (*Id.* at 233.)

On June 1, 2006, Bauer called appellant and stated he would have the rest of the money he owed appellant. (*Id.* at 234.) They met at the McDonald's in Mt. Oliver. Appellant arrived first, and when Bauer got there, appellant entered his car. Bauer gave him some money and asked if everything was square. (*Id.*) Appellant complained that he was frustrated as Bauer owed him money for a long period of time.

Appellant testified that he gave Sergeant Lamb a false name when he was pulled over for a traffic stop as he had not been making child support payments in violation of a court order. (*Id.* at 236, 242.) Appellant denied being aware at that time that he was facing a retrial on the charges.

A jury trial commenced before the Honorable Edward J. Borkowski; and on April 1, 2011, appellant was convicted of all three counts, and the trial court found him guilty of the summary offense. On June 30, 2011, appellant was sentenced to 7 to 14 years for Count 1 and a concurrent sentence of 90 days' imprisonment for the summary offense; no further penalty was imposed at Counts 2 and 3. Appellant filed a timely notice of

appeal on July 29, 2011. By order dated October 17, 2011, the appeal was dismissed for failure to comply with Pa.R.A.P. 3517.

On June 14, 2012, appellant filed a **pro se** petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, regarding both cases. Patrick Nightengale, Esq., was appointed as counsel; and on February 13, 2013, Attorney Nightengale filed separate petitions at each case seeking reinstatement of appellate rights **nunc pro tunc**. The trial court, by separate orders, reinstated appellant's appellate rights **nunc pro tunc**. On March 24, 2013, Attorney Nightengale filed two separate notices of appeal. This court, by its April 3, 2013 order, consolidated the appeals for review. On May 30, 2013, Judge Borkowski appointed William E. Brennan, Esq., to represent appellant in his appeals.

By separate order filed July 22, 2013, the trial court directed appellant to file a concise statement of matters complained of on appeal. Appellant filed an untimely statement in each case on November 12, 2013.[6] The following two issues have been presented for our review:

---

[6] In criminal cases, a defendant's attorney's untimely filing of a court-ordered Rule 1925(b) statement or the complete failure to file a statement, which results in waiver of all issues, is **per se** ineffectiveness, from which the defendant is entitled to prompt relief. **Commonwealth v. Burton**, 973 A.2d 428, 432-433 (Pa.Super. 2009) (**en banc**); **see** Pa.R.A.P. 1925(c)(3). However, this court held, "[w]hen counsel has filed an untimely Rule 1925(b) statement and the trial court has addressed those issues we need not remand and may address the merits of the issues presented." **Commonwealth v. Thompson**, 39 A.3d 335, 340 (Pa.Super. 2012). Instantly, the trial court filed a Rule 1925(a) opinion.

> I. DID THE LOWER COURT ABUSE ITS DISCRETION IN FINDING THAT THE VERDICTS WERE NOT CONTRARY TO THE WEIGHT OF THE EVIDENCE INSOFAR AS THE TESTIMONY OF THE CONFIDENTIAL INFORMANT THAT WAS PRESENTED TO ESTABLISH THAT [APPELLANT] INTENDED TO DELIVER THE DRUGS FOUND IN HIS POSSESSION WAS TENUOUS AND UNRELIABLE; AND THE AMOUNT AND PACKAGING OF THE DRUGS, WAS EQUALLY CONSISTENT WITH HIS PURCHASING THE DRUGS IN BULK AT LOWER COST FOR HIS OWN USE?
>
> [II.] DID THE LOWER COURT ERR IN DENYING DEFENSE COUNSEL'S MOTION IN LIMINE TO PRECLUDE ALL EVIDENCE REGARDING [APPELLANT'S] PRIOR CONVICTION FOR POSSESSION WITH INTENT TO DELIVER INSOFAR AS THIS EVIDENCE WAS IRRELEVANT, AND EVEN IF RELEVANT, ITS PREJUDICIAL IMPACT FAR OUTWEIGHED ITS PROBATIVE VALUE BY PORTRAYING [APPELLANT] AS HAVING A PROPENSITY FOR TRAFFICKING DRUGS, AND ADVERSELY AFFECTING THE JURY'S CONSIDERATION AND WEIGHING OF THE EVIDENCE, THEREBY DEPRIVING [APPELLANT] OF A FAIR TRIAL?

Appellant's brief at 7.[7]

We begin with the issue presented in appellant's appeal docketed at No. 355 WDA 2013. Appellant argues that his conviction for possession with intent to deliver was against the weight of the evidence. Following review of

---

[7] Additional issues contained in appellant's Rule 1925(b) statement have not been presented to our court in his brief; hence, we deem them to have been abandoned.

the certified record, we agree with the Commonwealth that appellant's claim is waived.

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; **Commonwealth v. Priest**, 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. **Commonwealth v. Sherwood**, 603 Pa. 92, 982 A.2d 483, 494 (2009).

**Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa.Super. 2012). After reviewing the record, it is clear that appellant has not complied with Rule 607.

While appellant's May 7, 2010 post-sentence motion challenges the weight of the evidence, the theory presented is entirely different than what he now argues on appeal. The following claim was presented in appellant's post-sentence motion: "[Appellant] avers that his verdict was against the weight of the evidence as [appellant's] identification was not corroborated by the evidence as the testimony lacked credibility." (Docket #10.) His brief in support of the motion averred the identification and credibility of the police officers was incredulous, and thus the verdict was against the weight of the evidence. (Docket #12.) However, in appellant's Rule 1925(b) statement, the following issue was presented:

> The verdicts were contrary to the weight of the evidence in that the evidence presented to establish that [appellant] intended to deliver the drugs found in his possession was tenuous and unreliable with

- 13 -

> regard to the circumstances leading up to his arrest and discovery of the drugs. Furthermore, the amount and packaging of the drugs[] was equally consistent with his purchasing the drugs in bulk at lower cost for his own use, especially given the lack of any indicia that he was selling drugs that day, such as large amounts of cash. The lack of any use paraphernalia was inconsequential given the fact that the key witness against him was an admitted drug user, who also purchased in bulk, and did not carry use paraphernalia around with him.

Docket #25.

As the issue presented in his Rule 1925(b) statement and argued in his brief was not previously presented to the trial court, we find appellant's weight of the evidence claim to be waived. *Priest*, *supra* (weight of the evidence claim waived for failure to present claim in the lower court, either orally or in writing before sentencing or in a post-sentence motion, and failure to present argument in court-ordered statement, pursuant to Pa.R.Crim.P. 607; Pa.R.A.P. 1925(b)(4)(vii)).[8]

The second issue presented concerns appellant's appeal at No. 356 WDA 2013 in relation to his retrial. Again, prior to his retrial, appellant filed a motion *in limine* seeking to preclude the Commonwealth from admitting evidence at the retrial regarding the events of June 7, 2006, that led to his conviction. The trial court denied the motion and permitted the Commonwealth to introduce evidence about the events of June 7th but

---

[8] We also note that the trial court's general discussion of the weight of the evidence in its Rule 1925(a) opinion does not preserve the issue for appeal. *Commonwealth v. Mack*, 850 A.2d 690, 694 (Pa.Super. 2004).

- 14 -

precluded the Commonwealth from introducing evidence that the events led to appellant's conviction. Herein, appellant alleges the evidentiary ruling was in error as the events of June 7th were irrelevant. Alternatively, appellant claims that if not irrelevant, the events' prejudicial impact outweighed their probative value. (Appellant's brief at 49.)

Admission of evidence rests within the discretion of the trial court, and we will not reverse absent an abuse of discretion. ***Commonwealth v. Washington***, 63 A.3d 797, 805 (Pa.Super. 2013). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Martinez***, 917 A.2d 856, 859 (Pa.Super. 2007).

Evidence of "other crimes, wrongs, or other acts" is inadmissible solely to show a defendant's bad character or his propensity for committing criminal acts. Pa.R.E. 404(b)(1); ***Commonwealth v. Kinard***, 95 A.3d 279, 284 (Pa.Super. 2014) (***en banc***), citing ***Commonwealth v. Brookins***, 10 A.3d 1251, 1256 (Pa.Super. 2010), ***appeal denied***, 22 A.3d 1033 (Pa. 2011). Such evidence is admissible, however, when relevant for another purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. ***Id.***; Pa.R.E. 404(b)(2). This court has also recognized the ***res gestae*** exception, permitting the admission of evidence

of other crimes or bad acts to tell "the complete story" of the crime on trial by proving its immediate context of happening near in time and space. **Commonwealth v. Williams**, 896 A.2d 523, 539 (Pa. 2006); **Commonwealth v. Paddy**, 800 A.2d 294, 308 (Pa. 2002); **Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988). Such evidence may be admitted, however, "only if the probative value of the evidence outweighs its potential for unfair prejudice." **Kinard**, **supra**; Pa.R.E. 404(b)(2).

We conclude that the trial court did not abuse its discretion when it held that the evidence of the June 7th events were relevant and admissible. The trial court found that the events of that date were relevant to establish "identity, intent, and the history and relationship of Bauer and appellant." (Trial court opinion, 1/17/14 at 10.) The other acts evidence was relevant to establish a chain of events and a course of criminal conduct; the June 7th events were inextricably linked to the events of May 31st and June 1st and led to appellant's arrest for those crimes. For instance, the events of June 7th demonstrated the manner (**i.e.**, telephone calls consisting of coded messages) in which the narcotics transactions were arranged, a distinctive meeting place (McDonald's in Mt. Oliver), and the amount of cocaine (four ounces). The events of June 7th also demonstrated the manner in which the transactions would occur -- Bauer would wait for appellant in a booth at McDonalds, appellant would arrive, and the men would proceed to

- 16 -

the bathroom where the cocaine transaction would occur. Appellant's arrival to the McDonald's on June 7th in possession with drugs packaged in a similar fashion of those recovered on May 31st dispels the notion that the events were an innocent coincidence and allowed for a reasonable inference that appellant sold cocaine to Bauer on May 31st and June 1st rather than accept appellant's defense that he was buying the cocaine from Bauer for his personal use.

In support of its position that the testimony regarding Bauer's interaction with appellant on June 7th was properly admitted, the Commonwealth cites *Commonwealth v. Echevarria*, 575 A.2d 620 (Pa.Super. 1990). The facts of *Echevarria* are comparable to those of the instant case. There, the defendant had been charged with the intent to deliver a large quantity of cocaine seized from his home. *Id.* at 622. At trial, the Commonwealth introduced testimony that an informant twice previously had purchased cocaine from the defendant prior to the sale that resulted in the defendant's arrest. *Id.* at 623. On appeal, this court held that such testimony was admissible as probative of defendant's status as a cocaine dealer and that its probative value outweighed its prejudicial effect. *Id.*

The June 7th events are logically connected to the criminal charges against appellant at his 2011 trial. The existence of the relationship between appellant and Bauer was critical to the jury's understanding of the

case. The Commonwealth was entitled to show that their interactions were not random; but rather, Bauer would receive drugs from appellant on a regular basis following a coded conversation; testimony was also presented that the men had previously met at this McDonald's and conducted the transaction in the men's bathroom. After careful review, we find the trial court's ruling was not an abuse of its considerable discretion.

Although we have concluded that the evidence was admissible on a legal basis, we must evaluate the evidence against the unfair prejudice standard of Pa.R.E. 403.

> In conducting the probative value/prejudice balancing test, courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility." McCormick, Evidence § 190 at 811 (4th ed.1992). *See also Commonwealth v. Frank*, 395 Pa.Super. 412, 577 A.2d 609 (1990) (enumerating balancing test factors, including ability for limiting instruction to reduce prejudice).

*Commonwealth v. Weakley*, 972 A.2d 1182, 1191 (Pa.Super. 2009).

Appellant is correct that evidence of other crimes is not admissible to establish that a defendant had a propensity to commit a crime. Clearly, the introduction of testimony concerning the June 7th events, which were prejudicial, established that appellant was a drug dealer. However, when balancing the probative versus the prejudicial nature of this evidence, it was

clearly supportive of the other evidence in this case and was critical in establishing the absence of mistake or accident and a common scheme, plan, or design.

The court did provide the jury with a limiting instruction regarding the evidence and emphasized the limited purpose for which the evidence was admissible, thereby minimizing its prejudicial effect. ***See Commonwealth v. LaCava***, 666 A.2d 221 (Pa. 1995) (any error in admission of the bad acts in capital murder prosecution was cured by trial court's cautionary instruction limiting the jury's consideration of bad acts).

> Ladies and gentlemen, [appellant] is not on trial for anything that occurred on June 7th of 2006. The only -- the purpose of that evidence is for a very limited purpose, and it's to -- if you find it to be credible, for the very limited purpose of possibly demonstrating the identity of the person who engaged in the alleged crimes on May 31st, 2006, and/or for the purpose of establishing intent to deliver or actual delivery on May 31st, 2006.
>
> This evidence must not be considered by you in any other way than for the purpose that I stated. You must not regard this evidence as showing that [appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.
>
> Similarly, the testimony of Mr. Bauer as to the events of June 7th or the testimony that he gave regarding alleged prior transactions between himself and [appellant], it only goes to those limited purposes and/or in that instance to show the history/relationship of the parties and the developing facts in this matter.

Notes of testimony, 3/31-4/1/11 at 131-132.  The trial court reiterated the limited purpose to the jury in its closing charge:

> You have heard evidence tending to show or prove that [appellant] engaged in conduct or was guilty of an offense or offenses for which he is not on trial in this matter.  This evidence is before you for a very limited purpose or potential purposes, if, in fact, you find it to be credible; that is to show the -- possibly show the identity of the person who delivered the cocaine on May 31st and June 1st of 2006 or the intent of the person who delivered the cocaine on May 31st and June 1st.
>
> . . . .
>
> In that regard, you also heard testimony regarding a prior relationship between Mr. Bauer and [appellant], that is, the evidence of that, whether you find it credible or not is entirely up to you, regarding one-and-a-half years of the relationship alleged by Mr. Bauer.  That was before you for the limited purpose of showing the history and relationship of the parties as well as the development of facts in this particular matter.
>
> It's important that you understand that you must not regard any of this evidence as showing that [appellant] is either a person of bad character or criminal tendencies, from which you might be inclined to infer guilt.

*Id.* at 294-296.

The jury was advised at trial that the challenged evidence could not be considered to show the character of appellant or to show that he acted in conformity with that character.  After presenting the evidence of the telephone calls, the jury was free to accept or reject the evidence and to give it whatever weight it felt it deserved.

J. S50003/14

Judgments of sentence affirmed.


Allen, J. joins the Memorandum.


Shogan, J. files a Concurring Statement.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2015

- 21 -