J-S47023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JESSE VANCE SHOEMAKER | |
| Appellant | No. 582 MDA 2014 |

Appeal from the Judgment of Sentence February 11, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001415-2012

BEFORE: ALLEN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 19, 2015**

Jesse Vance Shoemaker ("Shoemaker") appeals from the judgment of sentence imposed on February 11, 2014, in the Court of Cumberland County. A jury found him guilty of involuntary deviate sexual intercourse (IDSI) with a child, corruption of minors, and indecent assault.[1] The trial court determined Shoemaker was a sexually violent predator (SVP) and sentenced him to an aggregate term of 10 to 20 years' imprisonment.[2] On appeal, Shoemaker challenges (1) the sufficiency of the evidence, (2) the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3123(b), 6301(a)(1)(i), and 3126(a)(7), respectively.

[2] The trial court sentenced Shoemaker to 10-to-20 years' imprisonment on the IDSI charge. On the corruption of minors charge and indecent assault charge, the court sentenced Shoemaker to sentences of 1-to-5 years, to run concurrently with one another and with the IDSI sentence.

weight of the evidence, (3) the SVP determination, and (4) the legality of his

sentence. For the following reasons, we affirm.

The trial court has set forth the facts underlying Shoemaker's

conviction, as presented at the September 9–10, 2013, jury trial, as follows:

> The offenses at this docket occurred on or about April 22, 2006, when [Shoemaker] lived with [his paramour at the time, H.T.], his sons Z.S. and B.S. and the victim, J.M., H.T.'s daughter from another relationship, in Carlisle, Cumberland County. At the time of the offenses, [Shoemaker] was 29 years old and J.M. was 6 years old. By the time of trial, J.M. was a 14-year-old ninth grader who had been living almost exclusively with her father since shortly after the events in question. When asked how she could remember something that occurred when she was six, J.M. related "Because it was, like, bad. It was — I don't know." J.M. proceeded to relate her account, which the jury obviously accepted as true.

> The only time J.M. recalled being alone with [Shoemaker], was in April 2006, when [Shoemaker] took her home from the babysitter's because [H.T.] was working. When they arrived, he told her to go to her room. [Shoemaker] told J.M. to sit on her bed and placed her "stash of lollipops" next to her. [Shoemaker] then blindfolded J.M. with a black, silky nightgown and told her they were going to play a game where she would guess the flavors of the lollipops as he placed them in her mouth. After guessing 6 or 7 lollipop flavors, [Shoemaker] placed something "big and warm and hairy" into her mouth. Although J.M. tried to stop him because she was "chok[ing] on the hairs … he just kept going … pushing me forward ... holding my head, the back of my head ... moving my head forward."

> When he had finished, because J.M. could not guess the flavor "[Shoemaker] finally just said it was my thumb" and left the room before J.M. took off the blindfold, assuming the game was over. Later, J.M. knew that when [Shoemaker] told her not to say anything to anyone that "it was like the wrong thing," and so she told her mother "a couple days after … when he was gone." Although J.M. may not have fully appreciated [Shoemaker's] actions when she was six, she testified

unmistakably, that [Shoemaker] had placed his penis and not his thumb in her mouth.

[Shoemaker's] account of the incident differed substantially - not only did the tasting game involve several children, but it also took place while [Shoemaker's] mother and step-father were at the house. Interestingly, even in this setting, he went beyond the rules of the game and placed his "thumb" into J.M.'s mouth. Finally, [Shoemaker] explained that his "don't tell anybody" admonition was out of concern that [H.T.] would be upset that he had fed the kids candy before dinner, not that anything morally improper had occurred.

Trial Court Opinion, 9/30/2014, at 4–6 (footnotes omitted). Shoemaker was convicted and sentenced as stated above. Following the denial of his motion to reconsider/modify sentence, Shoemaker filed this timely appeal.

We first address Shoemaker's sufficiency claim. Our standard of review of sufficiency claims is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856–857 (Pa. Super. 2010).

The offenses of involuntary deviate sexual intercourse, corruption of minors, and indecent assault that are at issue in this sufficiency challenge, are defined in the Crimes Code, as follows:

- Involuntary deviate sexual intercourse with a child.

  A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S. § 3123(b).  Deviate sexual intercourse is defined as "[s]exual intercourse per os or per anus between human beings[.]"  18 Pa.C.S. § 3101.

- Corruption of minors.

  Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S. § 6301(a)(1)(i).

- Indecent assault

  A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and … the complainant is less than 13 years of age[.]

18 Pa.C.S. § 3126(a)(7).

Shoemaker claims the Commonwealth produced insufficient evidence to show inappropriate contact occurred between him and J.M for conviction of IDSI and indecent assault. Shoemaker further asserts without sufficient evidence to prove IDSI and indecent assault, the Commonwealth failed to establish the corruption of minors charge. **See** Shoemaker's Brief at 16–19.

Shoemaker contends the Commonwealth failed to prove all the elements of IDSI and indecent assault beyond a reasonable doubt because the only evidence the Commonwealth offered was the testimony of J.M., and there were no eyewitnesses, and no corroborating medical or physical evidence. Shoemaker argues the doctor who examined J.M. found no physical evidence of harm or abuse. Shoemaker also argues that J.M.'s testimony from the 2006 preliminary hearing wherein she described the rough edge of a thumbnail in her mouth changed at the 2013 trial when she stated she believed Shoemaker had put his penis in her mouth. In addition, Shoemaker points out J.M. admitted on cross examination that she had played the lollipop game with her step-sister, after she testified on direct examination she had never played the game before. **See** Shoemaker's Brief, **id.** Shoemaker's argument is meritless.

Section 3106 of the Crimes Code provides that testimony of a sex offense victim need not be corroborated. 18 Pa.C.S. § 3106. **See also Commonwealth v. McDonough**, 96 A.3d 1067, 1069 (Pa. Super. 2014), citing **Commonwealth v. Charlton**, 902 A.2d 554, 562 (Pa. Super. 2006)

("The uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant."), *appeal denied*, 108 A.3d 34 (Pa. 2015); **Commonwealth v. Castelhun**, 889 A.2d 1228, 1232 (Pa. Super. 2005) (same); **Commonwealth v. Poindexter**, 646 A.2d 1211, 1214 (Pa. Super. 1994) ("no medical testimony is needed to corroborate the victim's testimony"). Here, J.M. testified at trial that when she was six years old, Shoemaker put an object in her mouth that was "big, and warm and hairy." N.T., 9/9–10/2013, at 40. When she tried to stop the game, Shoemaker "kept going" and was "holding" and "moving" her head forward. *Id.* at 40–41. She testified that now that she was 14 years of age, she believed Shoemaker had inserted his penis in her mouth. *Id.* at 42. Her testimony, which the jury was free to believe and did believe, described Shoemaker playing a game to trick J.M. into performing oral sex on him. To the extent that Shoemaker argues and relies upon inconsistencies in J.M.'s testimony, Shoemaker is requesting that this Court view the evidence in the light most favorable to him. However, our standard of review requires us to view the evidence in the light most favorable to the Commonwealth as verdict winner. **See Brooks, supra.** As such, there was sufficient evidence to convict Shoemaker of the charged offenses. **See** 18 Pa.C.S. §§ 3123(b), 6301(a)(1)(i), and 3126(a)(7), **supra**. Therefore, Shoemaker's sufficiency challenge fails.

Shoemaker next argues that he is entitled to a new trial as the guilty verdicts against him were contrary to the weight of the evidence. However, Shoemaker did not raise a weight of the evidence claim in the trial court until he filed his Pa.R.A.P. 1925(b) statement and, therefore, it is waived. As this Court has reiterated:

> "[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; **Commonwealth v. Priest**, 2011 PA Super 85, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.
>
> **Commonwealth v. Sherwood**, 603 Pa. 92, 982 A.2d 483, 494 (2009).

**Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012). **See also Commonwealth v. Gillard**, 850 A.2d 1273, 1277 (Pa. Super. 2004) (finding waiver where defendant first raised weight of the evidence claim in Pa.R.A.P. 1925(b) statement). Therefore, we do not address this claim.

Next, Shoemaker challenges the sufficiency of the evidence to sustain the SVP determination. Our standard of review is well settled:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

This Court has explained the SVP determination process as follows:

> After a person has been convicted of an offense listed in [42 Pa.C.S.A. § 9799.14], the trial [court] then orders an assessment to be done by the [SOAB] to help determine if that person should be classified as a[n SVP. An SVP] is defined as a person who has been convicted of a sexually violent offense … and who [has] a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory .... Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

**Commonwealth v. Hollingshead**, 111 A.3d 186, 189 (Pa. Super. 2015)

(citations omitted).

Here, Shoemaker claims that the evidence introduced to suggest his behavior was predatory was insufficient. Specifically, Shoemaker argues:

> Dr. Stein[3] testified he believed Mr. Shoemaker engaged in predatory behavior by the single act of a penetrative sexual

---

[3] At the SVP hearing, the Commonwealth presented Robert Stein, Ph.D., a licensed psychologist and a member of the Pennsylvania Sexual Offender
*(Footnote Continued Next Page)*

assault. N.T. at 10-11. This Honorable Court should find this interpretation of the definition of predatory behavior by Dr. Stein, wherein a single sexual act suffices that a defendant initiated, established, maintained, or promoted a relationship with in order to facilitate victimization, insufficient because it would greatly expand the statute to include any sexual crime that had a single occurrence.

Shoemaker's Brief at 25. We find no merit in this argument.

The term "predatory" is defined by statute as follows:

"Predatory." An act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization.

42 Pa.C.S § 9799.12. Further, the term "sexually violent predator" is defined to include an individual convicted of IDSI (*see* § 9799.14(d)), and who "is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12.

At the January 17, 2014 SVP hearing, Dr. Stein, after analyzing the statutory factors, explained his SVP assessment of Shoemaker during his direct examination:

The first step is whether or not there is a condition which is the impetus to sexual offending. The condition in this case is pedophilia. When [Shoemaker] was 16, he engaged in a number

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Assessment Board ("SOAB" or "the Board"), who was qualified by the court as an expert in sexual offender assessments.

of sexual assaults on young children, three prepubescent victims, and he would have met criteria at that time of pedophilia.

Many years past and he has now engaged, well, as of 2006, in another offense against another prepubescent child. There is sufficient evidence to state that [Shoemaker] has harbored sexual interest in prepubescent children for a period greater than six months which allows him to meet the criteria for pedophilia.

This is not a curable condition. The condition overrode his control in that he would have had an urge to molest a young child that he either could not or would not control, and in terms of likelihood, if the defendant is an unsupervised contact with children in the future, there is likelihood of re-offense.

So based on all of that, it is my opinion that he suffers from mental abnormality as the Act defines it. That's the first issue of mental abnormality.

The second is whether or not the act of predatory sexually assaulting the child in this manner involving oral sex served to promote a sexually victimizing relationship and therefore meets the definition of predatory behavior in the promotion of sexual victimization as the statute defines it.

Q. And it's your opinion, to a reasonable degree of professional certainty, that the predatory behavior in this case … meets that?

A. Yes.

Q. And when you say defined by the statute, are you referring to Title 42 Section 9792?[4]

---

[4] We note that the applicable definitional section is 42 Pa.C.S. § 9799.12, as stated in the Commonwealth's Praecipe Pursuant to 42 Pa.C.S. § 9799.24(e), filed November 15, 2013, requesting an SVP hearing for Shoemaker For purposes of this appeal, we note the definition of "sexually violent predator" is essentially the same in both sections, and the definition of "predatory" is identical in both sections.

A. Yes.

Q. And referring back to the first definition, it's your opinion that [Shoemaker] is likely to re-offend again?

A. Yes.

Q. Based on your training and experience, do you have an opinion to a reasonable degree of professional certainty as to whether or not [Shoemaker] meets the statutory criteria and should be classified as a sexually violent predator?

A. Yes. I do believe he should be classified as a sexually violent predator.

N.T., 1/17/2014, at 10–11. The trial court, after hearing the testimony of Dr. Stein and Shoemaker, found the testimony of Dr. Stein to be credible, and determined the evidence was sufficient to prove by clear and convincing evidence that Shoemaker was an SVP. We agree.

The question before the court in an SVP hearing is whether the person's mental abnormality makes the person likely to engage in predatory behavior. *Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008) (citation omitted). Here, Dr. Stein concluded Shoemaker suffers from pedophilia and opined Shoemaker should be classified as an SVP as defined by statute. In advance of expressing his opinion, Dr. Stein testified regarding Shoemaker's predatory sexual assault of J.M., and also detailed his consideration of the statutory assessment factors in Section 9799.24,

which included Shoemaker's prior sexual assaults and the risk of re-offense.[5]

Having reviewed Dr. Stein's report and his testimony, we find no error in the trial court's conclusion there was clear and convincing evidence to sustain Shoemaker's designation as an SVP. Accordingly, no relief is due on this claim.

Finally, Shoemaker challenges the imposition of a 10-to-20 year sentence for IDSI. Shoemaker argues "the imposition of the 10 year mandatory minimum to 20 year statutory maximum sentence for Involuntary Deviate Sexual Intercourse with a minor was manifestly excessive and an abuse of discretion." Shoemaker's Brief at 26.

By way of background, the applicable mandatory minimum sentence for IDSI at the time of Shoemaker's offense was 5 years, pursuant to 42 Pa.C.S. § 9718. Thereafter, the Legislature raised the mandatory minimum sentence for IDSI to 10 years. Recently, in **Commonwealth v. Wolfe**, 106 A.3d 800, 805–806 (Pa. Super. 2014), this Court held that section 9718 is

---

[5] Regarding the factor of re-offense, Dr. Stein testified:

> Having any criminal history, having a prior sexual criminal history, having a history of greater than four sentencing dates for any criminal activity, having a prior violent offense, sex offense following treatment and having a history of male victims, that would have been the prior sex offense, and having an unrelated victim, all of these are associated statistically with increased risk.

N.T., 1/17/2014, at 9.

void in its entirety and facially unconstitutional based upon the United States Supreme Court's decision in **Alleyne v. U.S.**, 133 S. Ct. 2151 (2013) (holding that any "fact" that increases a mandatory minimum sentence must be treated as an element of the crime that must be submitted to a jury, not a sentencing court, and found beyond a reasonable doubt).

In light of **Alleyne** and **Wolfe**, Shoemaker argues, "The court … relied on the increased mandatory minimum to sentence [Shoemaker] to 10-to-20 years incarceration.  The Court's reliance on an unconstitutional mandatory minimum when imposing sentence is improper, [and] an abuse of discretion[.]"  Shoemaker's Brief at 28.

The standard of review that governs the applicability of a mandatory sentencing provision is as follows:

> Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary.

**Commonwealth v. Pennybaker**, ___ A.3d ___, ___ [2015 PA Super 161] (Pa. Super. 2015).

The record reveals that the Commonwealth provided notice to Shoemaker that it was seeking a five year mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718(a)(1).  The applicable, five year mandatory minimum, as well as the more recent 10 year mandatory minimum, were discussed at the sentencing hearing.  **See** N.T., 2/11/2014, at 12–13.  Also

discussed were the sentencing guidelines, which in this case called for a standard range minimum sentence of 72 months (6 years) to 120 months (10 years), although the top of the standard range was misstated to the court as 240 months. [6, 7]

The court, in imposing the 10-to-20 year sentence, which it mischaracterized as an aggravated range sentence, explained that the previous 5 year "mandatory minimum is quite frankly insufficient, and under the circumstances it is, as I say, imperative that you receive the maximum sentence available." *Id.* at 14–15. At the hearing on Shoemaker's motion for reconsideration of sentence, the court clarified that the IDSI 10-to-20

_____

[6] The sentencing guideline standard range for Shoemaker's offense is 72 months to the statutory limit. The "statutory limit" is **one-half of the statutory maximum**, which in this case is 10 years, as IDSI with a child is graded as a first degree felony with a 20 year maximum sentence. *See* § 303.9(g), Sentencing Guidelines Implementation Manual 6th ed., 6/3/2005 ("For purposes of the guidelines, the statutory limit is the longest legal minimum sentence, which is one-half the maximum allowed by law.").

Despite the misstatement that the top of the standard range was 240 months, the court was obviously aware that the longest minimum sentence that could be imposed for Shoemaker's IDSI conviction was 10 years. *See* N.T., 2/11/2014, at 15 (imposing 10-20 year sentence as "maximum sentence possible").

[7] Since the guidelines are longer than the 5-year applicable mandatory minimum sentence, the court must consider the guideline sentence recommendation. *See id.* at § 303.9(h) ("When the sentence recommendation is higher than that required by a mandatory sentencing statute, the court shall consider the guideline sentencing recommendation.").

year sentence "is within the standard range"[8] of the sentencing guidelines. N.T., 3/27/2014, at 21.

Recently, in **Commonwealth v. Zeigler**, 112 A.3d 656 (Pa. Super. 2015), this Court explicitly held that — where a mandatory minimum sentencing statute exists for a crime, but where the sentencing court exceeds the mandatory minimum term by applying a standard guideline range sentence — the trial court has not "sentence[d] the defendant based on the mandatory statute, and [the defendant's] sentence is not illegal on that ground." **Id.** at 662. Specifically, in **Zeigler**, this Court stated:

> [W]e are aware that a mandatory minimum statute exists for [the defendant's] aggravated assault crime since he admitted to visibly possessing a firearm during its commission. 42 Pa.C.S.A. § 9712. Based on decisions from this Court, imposing such a mandatory is illegal. **However, the sentencing court exceeded the mandatory minimum sentence when it applied the standard guideline range sentence where a deadly weapon was used. Hence, the court did not sentence the defendant based on the mandatory statute, and his sentence is not illegal on that ground**.

**Id.** (emphasis added).

Here, the record makes clear that the trial court did not apply either the applicable five year mandatory minimum or the more recent 10 year

---

[8] We note the Pennsylvania Sentencing Guideline form contained in the certified record shows the mandatory minimum statute — Section 9718, the mandatory minimum of "60 months," the mitigated guideline range of "60 Months," and the standard guideline range of "72 – 240" (sic) months. The guideline form also reflects the sentence imposed as "standard/mandatory." The guideline form, however, is only for record-keeping purposes.

mandatory minimum. Rather, the trial court exceeded the mandatory minimum, and based the 10-to-20 year sentence upon the sentencing guideline recommendations. As such, we conclude Shoemaker's claim that his sentence is illegal is baseless and warrants no relief.

As discussed above, we have treated Shoemaker's claim as an illegal sentencing claim based upon *Alleyne* and *Wolfe*. To the extent Shoemaker also argues his sentence is excessive and the court abused its discretion, this claim would be a challenge to the discretionary aspects of the sentence, although Shoemaker has not specifically framed his argument as such.

In any event, even had Shoemaker properly presented a discretionary aspects of sentencing challenge, we would find no abuse of discretion. The record of the sentencing hearing reflects the trial court fully justified its sentence, explaining its consideration of all relevant sentencing factors, including "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant," in accordance with 42 Pa.C.S. § 9721. *See* N.T., 2/11/2014, at 14. Therefore, we would conclude no relief is due.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/19/2015