COMMONWEALTH of Pennsylvania,
Appellee

v.

Markez PRIEST, Appellant.

Superior Court of Pennsylvania.

Submitted March 14, 2011.
Filed April 21, 2011.

---

Kurt J. Winter, Public Defender, Beaver, for appellant.

Anthony J. Berosh, Assistant District Attorney, Beaver, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., LAZARUS and PLATT *, JJ.

OPINION BY STEVENS, P.J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Beaver County following Appellant Markez Priest's conviction by a jury on the charges of first-degree murder and firearms not to be carried without a license.[1] Appellant contends (1) the jury's verdict is against the weight of the evidence, (2) the evidence was insufficient to prove that Appellant was the perpetrator of the crimes, and (3) the trial court erred in denying Appellant's motion *in limine* to exclude out-of-court statements made by Mr. Odom, as well as permitting the jury to view a portion of a videotape taken at the hospital's trauma unit. We affirm.

The relevant facts have been aptly set forth by the trial court as follows:

As of July of 2009, Chalese Jackson maintained an intermittent relationship with [Appellant] and was the mother of his child. On July 8, 2009, Ms. Jackson had informed [Appellant] via telephone that she was ending this relationship because [she] "didn't want to be with him." That night, [Appellant] called Ms. Jackson because he wished to continue the relationship.

In the early hours of July 9, 2009, Ms. Jackson was approached by [Darius] Odom on Todd Street; that night they had planned to meet Kevonna Thomas, with whom Mr. Odom had a relationship, and Jamie Turner. Ms. Jackson and Mr. Odom began walking up Todd Street towards Ms. Jackson's home in order to charge Mr. Odom's cell phone. While walking to Ms. Jackson's home, they were approached by an individual walking towards them. Mr. Odom held his hands up and said "whoa, whoa, whoa;" Ms. Jackson ran away. Ms. Jackson heard a gunshot and looked back; upon doing so, she observed the gunman and Mr. Odom fighting. Ms. Jackson also heard a second gunshot.

At trial (and at previous pre-trial proceedings) Ms. Jackson did not identify the shooter.[2] However, Beaver County Detective Timmie Patrick testified that, during a [police] interview on July 9, 2009, Ms. Jackson did identify [Appellant] as the shooter. [Specifically, he testified as follows on direct examination:]

[At that point when] I asked her during the time [of the interview] who is the shooter, you had to see him, do you know the name of the shooter? At that point, Miss Jackson wrote the name Markez Priest, which is indicat-

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 2501 and 6106, respectively.

2. Specifically, during trial, the relevant exchange occurred regarding the identity of the shooter:

[**Assistant Public Defender**]: And the different times we talked to you on the things, the different times you testified, you have never been able to say who that person was [that shot Mr. Odom]?

[**Ms. Jackson**]: No.

N.T. 4/27/10 at 495.

ed down below. She wrote the name, tapped twice real hard, stood up, and started crying and sobbing and began to walk out of the interview room, which was about maybe five to seven yards. She was visibly and physically upset and crying.

[N.T. 4/28/10 at 672.]

Also, in a voluntary statement written during the same interview, Ms. Jackson wrote: "Then somebody or Markez was walking up to us, shot one time." [3] [N.T. 4/28/10 at 674.]

Following the shooting, Mr. Odom was flown to UPMC Presbyterian, as that facility possesses the nearest Level One Trauma center. [Mr. Odom suffered gunshot wounds to his right arm and the back of his neck.] Four employees of UPMC involved with the treatment of Mr. Odom on July 9, 2009 (Jaclyn Kuzminsky, a certified respiratory therapist, Dr. Brian Bane, an anesthesiologist, Nathan Sullivan, a registered nurse, and Dr. Raquel Forsythe, a trauma surgeon) testified that Mr. Odom said "Markez shot me" immediately prior to being intubated.[4] Furthermore, the trauma bays at UPMC Presbyterian were videotaped for educational purposes; the videotape portrayed Mr. Odom saying the name "Markez" three times, then saying "shot me."

Numerous witnesses testified that they were aware of no other individual in Aliquippa named "Markez." [Mr. Odom died at approximately 10:09 A.M. on July 9, 2009, as a result of his gunshot wounds.]

Trial Court Opinion filed 10/29/10 at 3–5 (footnotes citing to record omitted) (footnotes added).

At the conclusion of trial, the jury convicted Appellant of the offenses indicated *supra*, and on June 29, 2010, the trial court sentenced Appellant to an aggregate of life in prison without the possibility of parole. Appellant filed a timely counseled notice of appeal. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant's attorney filed a statement on behalf of Appellant presenting the following issues:

(1) The Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that the Appellant is guilty of the crimes alleged.

(2) The Appellant argues that the Court erred in denying Appellant's motion to suppress the victim's statements. Specifically, the victim was deceased and not available for cross-examination at trial. Said statements should have been excluded as hearsay.

(3) The Appellant argues that his attorneys were ineffective.

Appellant's Pa.R.A.P. 1925(b) Statement filed 9/13/10 at 1–2.[5]

---

**3.** As is discussed *infra*, while he was being treated at the hospital, Mr. Odom identified Appellant as the shooter. However, Detective Patrick was unaware of this fact at the time he questioned Ms. Jackson. N.T. 4/28/10 at 673.

**4.** Ms. Kuzminsky testified that, when she was providing Mr. Odom the bagging mask, he said, "Please don't let me die," and "Markez shot me." N.T. 4/28/10 at 602. Dr. Bane testified that, just prior to sedating Mr. Odom, he kept repeating the name "Markez" and said, "Markez shot me." N.T. 4/28/10 at 614. Nurse Sullivan testified that, when he called

out for the sedation medication, Mr. Odom said, "Don't let me die," and "Markez shot me." N.T. 4/28/10 at 622–23. Dr. Forsythe testified that, after she told Mr. Odom she was going to insert a breathing tube, he said, "Save me," and "Markez. He shot me." N.T. 4/28/10 at 640.

**5.** As mentioned by the trial court, Appellant's counsel filed the Pa.R.A.P. 1925(b) statement in an untimely manner. *See* Trial Court Opinion filed 10/29/10 at 2 n. 4. However, just as the trial court did, we shall overlook this fact and not find waiver as a result thereof. *See Commonwealth v. Williams*, 2 A.3d

The trial court filed a responsive Pa. R.A.P. 1925(a) opinion on October 29, 2010.

■ Appellant's first contention is the jury's verdict is against the weight of the evidence. Specifically, he argues that, Ms. Jackson, who is the only living eyewitness, did not make an in court identification of Appellant as the shooter, and thus, the jury's conclusion Appellant was the shooter "shocks one's sense of justice." The Commonwealth maintains that Appellant has waived this claim by failing to present it in the lower court. We agree.

Rule 607 of the Pennsylvania Rules of Criminal Procedure requires that a claim that the verdict was against the weight of the evidence be raised with the trial judge in a motion for a new trial:

> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

Pa.R.Crim.P. 607. As noted in the comment to this rule, "[t]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Id.* cmt.

*Commonwealth v. Bond,* 604 Pa. 1, 985 A.2d 810, 820 (2009) (footnote omitted).

Our review of the record reveals that Appellant did not present a weight of the evidence claim orally or in writing before sentencing or in a post-sentence motion.[6] Thus, his claim is waived on this basis.[7] *See Bond, supra.*

Appellant's next contention is that the evidence was insufficient to establish that he was the perpetrator of the crimes.

In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. We may not weight the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.

*Commonwealth v. Cain,* 906 A.2d 1242, 1244 (Pa.Super.2006), *appeal denied,* 591 Pa. 670, 916 A.2d 1101 (2007) (citations omitted). Lastly, the finder of fact may believe all, some or none of a witness's testimony.

*Commonwealth v. Bullock,* 948 A.2d 818, 823 (Pa.Super.2008) (citations omitted).

■ As indicated *supra,* Appellant's argument is specific in nature. Rather than challenging the sufficiency of the evidence to support any of the applicable elements of the offenses, Appellant contends the evidence was insufficient to prove that he was, in fact, the person who shot Mr. Odom. As such, we will focus on the specific issue raised by Appellant: whether the evidence was sufficient to establish

---

611 (Pa.Super.2010) (*en banc*); *Commonwealth v. Burton,* 973 A.2d 428 (Pa.Super.2009) (*en banc*).

**6.** We note that, at the conclusion of the sentencing hearing, the trial court specifically informed Appellant of his post-sentence and appellate rights. N.T. 6/29/10 at 18–19.

**7.** Additionally, we note that Appellant's claim is waived because he failed to present it in his court-ordered Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii).

that Appellant was the person who shot Mr. Odom. *See Cain, supra.*

In order to prove Appellant was the person who shot Mr. Odom, the police offered the testimony of Detective Patrick, who indicated that, on the day of the shooting, he interviewed an eyewitness, namely, Ms. Jackson. Detective Patrick specifically testified that, although she was visibly upset and crying, Ms. Jackson identified Appellant, who was the father of her child, as the shooter. Moreover, the Commonwealth offered the testimony of four trauma unit medical personnel, who all confirmed that, just prior to being intubated, Mr. Odom said, "Markez shot me." Also, the jury viewed a portion of the trauma unit's videotape, in which Mr. Odom said the name "Markez" and "shot me." Viewing the evidence in the light most favorable to the Commonwealth, as we must under our standard of review, we conclude the evidence was sufficient to establish Appellant was the perpetrator of the offenses. *See Cain, supra.*

We specifically note that we find unavailing Appellant's argument that the evidence is insufficient since Ms. Jackson did not identify Appellant in any court proceeding as the shooter and Appellant offered his own alibi testimony, as well as alibi testimony from his mother and his sister-in-law.[8] It is well settled that the jury is free to believe all, some or none of a witness's testimony. *Bullock, supra.* The fact the jury apparently accepted the Commonwealth witnesses' testimony, but rejected Appellant's and his family's testimony, does not render the evidence insufficient. Moreover, the jury was free to believe Detective Patrick's testimony regarding Ms. Jackson's out of court identification of Appellant and draw its own conclusions as to why Ms. Jackson identified Appellant as the perpetrator on the day of the shooting but did not do so during court proceedings. *See id.*

 Appellant's final contention is that the trial court erred in denying Appellant's motion in *limine* to exclude Mr. Odom's statements, which he made while in the trauma unit at the hospital, since such statements constituted hearsay and did not satisfy the dying declaration exception. Intertwined therein, he further contends the trial court erred in admitting into evidence a portion of the trauma unit's videotape, in which Mr. Odom made statements identifying Appellant as the shooter,[9] since the prejudicial value outweighed the probative value and was irrelevant to the case.

The admission of evidence is committed to the sound discretion of a trial court and will not be reversed absent an abuse of discretion. Discretion is abused where the law is not applied. . . .

---

8. Specifically, Appellant testified that he was at his mother's house on the front porch at the time of the shooting and he has never handled a gun. N.T. 4/29/10 at 831–35. Appellant's mother testified that Appellant was at her home at the time of the shooting. N.T. 4/29/10 at 806. Appellant's sister-in-law, whose row home shares a porch with Appellant's mother's row home, testified Appellant was on his mother's front porch at the time of the shooting. N.T. 4/29/10 at 814–815.

9. Specifically, the videotape included the following exchange between hospital personnel and Mr. Odom:

(WHEREUPON, the video was played for the jury.)
UNIDENTIFIED SPEAKER: Measuring 30 of Etomidate.
THE DECEASED: Markez.
UNIDENTIFIED SPEAKER: What?
THE DECEASED: Markez.
UNIDENTIFIED SPEAKER: Mark Hess?
THE DECEASED: Markez.
UNIDENTIFIED SPEAKER: Markez. Okay.
THE DECEASED: Shot me.
UNIDENTIFIED SPEAKER: All right. We are taking care of you.
N.T. 4/28/10 at 648.

The hearsay rule provides that evidence of a declarant's out-of-court statements is generally inadmissible because such evidence lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence. Hearsay evidence is presumed to be unreliable because the original declarant is not before the trier of fact, and therefore, cannot be challenged as to the accuracy of the information conveyed. Exceptions to the hearsay rule are premised on circumstances surrounding the utterance which enhance the reliability of the contents of the utterance, and render unnecessary the normal judicial assurances of cross examination and oath.

\* \* \*

■ A statement is a dying declaration and, therefore, admissible hearsay if the declarant believes he or she is going to die (which can be inferred from the surrounding circumstances), death is imminent, and death actually results. "[W]hen a person is faced with death which he knows is impending and he is about to see his Maker face to face, is he not more likely to tell the truth than is a witness in Court who knows that if he lies he will have a locus penitentiae, an opportunity to repent, confess and be absolved of his sin?"

*Commonwealth v. Chamberlain,* 557 Pa. 34, 731 A.2d 593, 595, 597 (1999) (citations and quotation omitted). *See Commonwealth v. Griffin,* 453 Pa.Super. 657, 684 A.2d 589 (1996).

■ Here, in finding Mr. Odom's out-of-court statements made at the trauma center to be admissible under the dying declaration exception, the trial court stated as follows:

[Appellant's] Motion in Limine asserted that statements [Mr.] Odom made at UPMC Presbyterian Hospital were inadmissible under the dying declaration hearsay exception because: (1) the Commonwealth did not establish that [Mr.] Odom believed that his death was imminent; and (2) [Mr.] Odom's death did not occur for about six hours following his statements.

The Court finds that [Mr.] Odom did believe that his death was imminent at the time he identified "Markez" as his assailant. The videotape presented by the Commonwealth showed [Mr.] Odom on a table surrounded and treated by multiple medical personnel. [Mr.] Odom repeatedly tells medical personnel that he does not want to die, he complains of pressure in his chest and difficulty breathing, and he expresses a desire to see his daughter. Following these statements, and shortly before being intubated, [Mr.] Odom identifies "Markez" as the individual who shot him.

Furthermore, the lapse of six hours between [Mr.] Odom's statements and his actual death is not determinative of the issue as to whether statements were admissible under the dying declarations exception to the hearsay rule. In the case of *Commonwealth v. Griffin,* [*supra*], the victim was shot in the arm, which severed a major artery. Police came upon the victim lying on the ground, bleeding heavily, and drifting in and out of consciousness. *Id.* The victim asked the officers to get him to a hospital, asked the officers to "just let me die," and identified [Appellant], Aaron Griffin, as his assailant. *Id.* The victim died as a result of his injuries, but not for three days following his identification. *Id.* at 592–93. The Superior Court held as follows:

"[A]ppellant would have us rule that the victim's statement could not serve as a dying declaration because the victim did not actually die until three days after the statement was made. However, Appellant cites us no case

with such a holding, and in fact ignores several decisions to the contrary."

*Id.* at 593 [ (citations omitted) ].

The Court finds the statements of [Mr.] Odom at UPMC Presbyterian Hospital were made while he was under a belief of impending death and were concerning the cause of that impending death. Therefore such statements were properly admitted under Pennsylvania Rule of Evidence 804(b)(2) and this allegation of error is without merit.

Trial Court Opinion filed 10/29/10 at 7–8 (footnote citing to record omitted).

We conclude the trial court did not abuse its discretion in finding Mr. Odom's out-of-court statements were admissible pursuant to the dying declaration exception to the hearsay rule. *See Chamberlain, supra.*

 Finally, with regard to the trial court introducing a portion of the trauma unit videotape in which Mr. Odom identifies the person who shot him, we disagree with Appellant that the trial court abused its discretion in finding the prejudicial impact did not outweigh the probative value or that such was relevant.

In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Weakley,* 972 A.2d 1182, 1188 (Pa.Super.2009) (quotation omitted).

Here, in the videotape, Mr. Odom identified the person who shot him. Clearly, such was relevant in that it logically tend-

ed to establish a material fact, i.e., the perpetrator of the crimes. *See id.* As for whether the prejudicial impact outweighed the probative value, aside from baldly asserting such was the case here, Appellant has failed to develop this argument. Specifically, he has failed to explain why he believes the evidence should have been excluded on the basis the prejudicial impact outweighed the probative value, and he has cited no authority supporting his position. Thus, he is not entitled to relief.

For all of the foregoing reasons, we affirm.

Affirmed.

LAZARUS, J., concurs in result.