J-A19006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANTHONY R. JOSEPH, | |
| Appellant | No. 1438 WDA 2013 |

Appeal from the Judgment of Sentence Entered August 2, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000958-2013

BEFORE:  BENDER, P.J.E., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 5, 2014**

Appellant, Anthony R. Joseph, appeals from the judgment of sentence of 3-6 days' incarceration and 6 months' non-reporting probation, imposed following his conviction for driving under the influence of a controlled substance pursuant to 75 Pa.C.S. § 3802(d)(2).  Appellant contends that the trial court erred when it assessed the credibility of a witness who did not testify after invoking her privilege against self-incrimination.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

In the early afternoon, on September 26, 2012, Jenna Carter had exited her parked vehicle and was on the steps to her home when she heard a loud bang and turned to see the [Appellant's] car hit her vehicle.  [Appellant's] vehicle did not stop and

---

[*] Former Justice specially assigned to the Superior Court.

continued down the hill. She called out [for him] to stop and [Appellant] backed up to Ms. Carter, almost hitting her vehicle again. He exited the vehicle and appeared to be under the influence. His speech was slurred and he stumbled, almost falling, when he tried to walk up the steps to her home. He inquired whether Ms. Carter was okay and appeared to be unaware that she was not in the vehicle at the time of impact. [Appellant] apologized and exchanged insurance information with her.

Officer Horak of the Ross Township Police was the first to arrive on the scene of the accident at approximately 12:35 p.m. Ms. Carter explained to Officer Horak that [Appellant's] vehicle had hit her car. Officer Horak approached [Appellant] as he leaned against his car. [Appellant] tried to stand up and stumbled, catching himself against the car. He explained to Officer Horak that he had a minor accident by hitting Ms. Carter's car and nobody was injured. Officer Horak believed [Appellant] was under the influence of some type of substance. Officer Horak observed that [Appellant's] eyes were glassy and bloodshot, his speech was very slow and slurred. Officer Horak also noted that [Appellant] was very sleepy and could not keep his balance, continually falling over and raising himself on the car. [Officer Horak] asked [Appellant] if he had anything to drink today, to which he replied no. [Appellant] stated that he was sick and took Motrin and cough syrup.

Officer Sean Stafiej arrived on the scene from Ross Township Police about five (5) minutes later. Officer Stafiej was informed by Officer Horak that he believed that [Appellant] was under the influence of drugs or alcohol. Officer Stafiej testified that [Appellant's] clothes were mussed, he smelled of vomit, and he was nodding off unable to keep his eyes open. [Appellant] denied any alcohol consumption and told the officer that he had taken a lot of cold medicine because he was sick. [Appellant] appeared sleepy and sluggish and kept closing his eyes and nodding off. [Appellant] agreed to perform field sobriety tests and the tests were demonstrated by Officer Stafiej. During the walk-and-turn test, [Appellant] did not touch heel to toe on any of the steps, [he] used his arms to maintain his balance[,] and [he] did an improper turn. On the one leg stand test [Appellant] put his foot down in six seconds, hopped on one foot to maintain his balance, and used his arms to maintain his balance. [Appellant] failed the field-sobriety tests. Based on his observations Officer Stafiej formed the opinion that [Appellant]

- 2 -

was under the influence of a controlled substance and was unable to operate a motor vehicle safely.

[Appellant] was transported to Passavant Hospital and agreed to provide a blood sample. During this transportation, [Appellant] was having extreme difficulty staying awake.

Jennifer Janssen, Assistant Chief Toxicologist [at the] Allegheny County Office of the Medical Examiner, Forensic Science Laboratory Division[,] testified as an expert in Forensic Toxicology. … [She testified regarding] the crime lab report[,] [which indicated the presence of] Zolpidem in the blood at a level of 67 nanograms per m[L] …. The level detected in [Appellant's] blood … was within the therapeutic range. Zolpidem is better known as Ambien and is used to promote sleep and is prescribed for the treatment of insomnia. Its desired effect is drowsiness and sedation. Other side effects associated with the use of Ambien [are] slurred speech, slowed reflexes, disorientation, fatigue and lethargy. She further testified that the manufacturer indicates that this drug should not be used prior to driving. Zolpidem (Ambien) is a schedule IV drug and has a relatively short half[-]life, in the range of 1.4 to 4.5 hours with an average of 2.5 hours.

Also present in the blood sample was Dextromethorphan[,] an antitussive-type medication that is found in many over-the-counter preparations, such as Robitussin. The level that was detected in this case was 62 nanograms per mL. The level that has been associated with impaired driving is greater than 100 nanograms per mL.

Ms. Janssen testified that she would be unable to separate the side effects of the drugs and that the presence of Ambien by itself would be impairing. In fact, the drowsiness aspect of the two drugs would be additive. It was her opinion[,] to a scientific degree of certainty[, that Appellant] would have been impaired.

Trial Court Opinion (TCO), 12/13/13, at 2-5 (internal citations and footnotes omitted).

The Commonwealth charged Appellant by criminal information with two counts of driving under the influence of a controlled substance, 75

Pa.C.S. § 3802(d)(1) (Count 1) and 75 Pa.C.S. § 3802(d)(2) (Count 2). Appellant's non-jury trial was held on August 2, 2013. During the course of the trial, Count 1 was withdrawn. At its conclusion, Appellant was found guilty of Count 2 (hereinafter, "DUI offense"). He was sentenced the same day as noted above. He did not file a post-sentence motion.

Appellant filed a timely notice of appeal on September 3, 2013.[1] Appellant complied when instructed to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial court issued its Rule 1925(a) opinion on December 13, 2013. He now presents the following question for our review:

> Whether the trial court committed error necessitating a new trial by adjudging [Appellant] guilty after an on the record recitation that his defense was not credible, when his defense's credibility could not be weighed without hearing the testimony of Alice Petrovich, who invoked her privilege against self-incrimination, and refused to testify, which testimony was excluded by the trial judge[?]

Appellant's Brief at 2.

As a threshold matter, we must determine the nature of Appellant's claim in order to assess whether it was preserved below and, if so, the appropriate standard of review to apply. The Commonwealth asserts that

---

[1] September 2, 2013, a Monday, fell on a public holiday (Labor Day). Thus, although Appellant filed his notice of appeal on September 3, 2013, 32 days after the trial court sentence him, it was still timely. **See** 1 Pa.C.S. § 1908 (stating that when computing statutory time periods where the last day of the time period being calculated falls "on Saturday or Sunday, or on any day made a legal holiday …, such day shall be omitted from the computation").

Appellant is presenting a challenge to the weight of the evidence, and the trial court addressed Appellant's issue as such in its Rule 1925(a) opinion. Appellant disagrees with this characterization, and instead articulates his claim as trial court error. We need not resolve this dispute because, under either view, we conclude that Appellant failed to adequately preserve the claim for our review.

Appellant attempted to establish the affirmative defense of involuntary intoxication during his trial. "To that end, he sought to call his girlfriend/former girlfriend Alice Petrovich to the stand to inquire whether she had 'spiked' [his] tea with Ambien." TCO, at 5. However, "Ms. Petrovich, present with counsel, asserted her right against self[-]incrimination." *Id.* Subsequently, Appellant testified that "[h]e had been suffering from a flu[-]like illness and Ms. Petrovich was 'taking care' of him and was giving him chicken soup, hot totties (tea with whiskey) and orange juice. He testified that he has never willingly taken any Ambien or any sleeping pill." *Id.* at 7-8. The defense then introduced voicemails left by Petrovich on Appellant's phone in the weeks following his arrest to support his affirmative defense theory of involuntary intoxication. The messages were summarized by the trial court as follows:

> The defendant identified the caller as Ms. Petrovich and the dates of the messages were October 10, 2012 and October 17, 2012. Message 1 — "I hope they don't detect any kind of sleeping pills in your bloodstream or anything other than what you had taken. Bye." Message 2 — "Just thought you might be interested in what I gave you that night. If not, let me know. Bye." Message 3 – "Do you want your police report, copy of

- 5 -

your police report? I can give it to you in your mailbox. Please let me know if you want the name of the drug let me know. Bye." Message 4 — "If you want, I'd like to tell you the name of the pills that I gave you. You ought to know them. You should want to know them. Anyway let me know. Bye."

*Id.* at 7.

Appellant now disputes "the trial court's discounting his defense of involuntary intoxication because the trial court – after permitting Petrovich's blanket invocation of the Fifth Amendment – finds no credibility in the three messages left by Petrovich on [Appellant's] telephone." Appellant's Brief at 8. Appellant cites the following statements by the trial court to support his claim that the trial court had improperly considered the credibility of Petrovich:

> What's inconsistent to me is you have somebody who, while admittedly they have a very rough relationship, she's caring for him, no concerns. There seems to be no motive. Other than a while later, a number of weeks later, she calls. She doesn't reference the night of the 26th. She says ["]that night.["] I don't know.
>
> The combination with that, along with the testimony from Ms. Janssen regarding the level of the Ambien with – in combination with the – what would be the breakdown or the half-life, the dosage, even if I would go out to that night, I don't know that that amount would be left in his system at that time.
>
> So, frankly, I mean, to sum it up, I don't find that particular defense credible. I have nothing on which to base that as a credible claim. And given that the other facts really aren't in dispute, I would have to find him guilty on that charge.

Appellant's Brief, at 8-9 (quoting N.T., 8/2/13, 70-71).

If we assume, as Appellant suggests, that the nature of his claim is grounded in trial court error, then Appellant was required to preserve such a

claim with a contemporaneous objection. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) (recognizing that "[e]ven issues of constitutional dimension cannot be raised for the first time on appeal"). Here, we discern no objection made by Appellant in the record to the trial court's credibility assessment of Petrovich, the voicemails she left on Appellant's phone, nor regarding Appellant's involuntary intoxication defense. Furthermore, Appellant does not direct our attention to any part of the record wherein such an objection was lodged. Accordingly, under Appellant's own theory regarding the nature of his claim, it has clearly been waived.

Alternatively, both the Commonwealth and the trial court characterize Appellant's claim as a challenge to the weight of the evidence.

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 494 (2009).

*Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012). Here Appellant did not file any post-sentence motions, did not file any post-verdict motions, and did not orally raise a weight of the evidence claim at sentencing. Accordingly, even if treated as a weight of the evidence claim, this issue has been waived.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/5/2014