J-S21012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARKEZ PRIEST | |
| Appellant | No. 905 WDA 2016 |

Appeal from the PCRA Order June 8, 2016
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0001503-2009

BEFORE:  LAZARUS, J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 8, 2017**

Markez Priest appeals, *pro se*, from the order entered in the Court of Common Pleas of Beaver County, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm the PCRA court's order on the basis of the opinion authored by the Honorable Richard Mancini.

On July 9, 2009, Priest shot and killed Darius Odom while Odom was walking with the mother of Priest's child.  On April 30, 2010, a jury convicted him of first-degree murder and a firearms offense.  On June 29, 2010, Priest was sentenced to life imprisonment.  His judgment of sentence was affirmed

_____

[*] Retired Senior Judge assigned to the Superior Court.

by this Court. *See Commonwealth v. Priest*, 18 A.3d 1235 (Pa. Super. 2011).

Priest filed a PCRA petition on July 5, 2011, which resulted in the court reinstating Priest's appellate rights, specifically to challenge the weight of the evidence. This Court affirmed, *see Commonwealth v. Priest*, 82 A.3d 466 (Pa. Super. 2013) (Table), and our Supreme Court denied allowance of appeal. *See Commonwealth v. Priest*, 80 A.3d 776 (Pa. 2013) (Table).

On April 23, 2014, Priest filed a *pro se* PCRA petition,[1] followed on May 29, 2014, by an amended *pro se* petition. These petitions raised the following issues: (1) the legality of Priest's sentence in light of *Miller v. Alabama*, 312 S. Ct. 2455 (2012); (2) ineffectiveness of trial counsel for failing to present DNA evidence found on the victim; (3) ineffectiveness of trial counsel for failing to present the victim's blood toxicology report; (4) ineffectiveness of trial counsel for failing to present the ballistics report; (5) trial court error in admitting video of victim receiving treatment at the hospital; and (6) prosecutorial misconduct during closing argument.

Counsel was appointed to represent Priest and subsequently filed a "no merit" letter pursuant to *Turner*/*Finley*.[2] On November 12, 2014, the PCRA

_____

[1] Because Priest's first PCRA petition resulted in the reinstatement of his appellate rights, his April 2014 petition was properly treated as a timely first PCRA petition.

[2] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (en banc).

court issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. Priest filed a response to the court's Rule 907 notice, as well as a "*Nunc Pro Tunc* Motion for Post Conviction Relief." These filings raised three additional grounds for relief: (1) trial counsel ineffectiveness for failure to raise a voluntary manslaughter defense; (2) illegality of sentence pursuant to **Alleyne v. United States**, 133 S. Ct. 2151 (2013), and **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014); and (3) trial counsel ineffectiveness for failing to subpoena Priest's telephone records to show his location at the time of the offense. On February 13, 2015, the PCRA court directed appointed counsel to review the third issue, relating to telephone records. On January 11, 2016, counsel filed a second "no merit" letter concluding that claim was meritless. Priest filed a response, in which he raised one new ground for relief: the discovery of a new alibi witness and/or ineffective assistance of trial counsel in failing to call the witness. On April 8, 2016, the PCRA court issued another Rule 907 notice and, on June 8, 2016, the court dismissed Priest's petition and granted counsel leave to withdraw.

This timely appeal follows, in which Priest raises the following claims for our review:[3]

_____

[3] We have reworded Priest's claims for the sake of clarity and brevity.

1. Whether the PCRA court erred in denying relief where trial counsel was ineffective for failing to present exculpatory DNA evidence.

2. Whether the PCRA court erred in denying relief where trial counsel was ineffective for failing to obtain and present Priest's cell phone records.

3. Whether the PCRA court erred in denying relief where trial counsel was ineffective for failing to present the victim's toxicology report.

4. Whether the PCRA court erred in failing to find that Priest's sentence is illegal pursuant to *Miller*.

*See* Brief of Appellant, at 4-5.

We begin by noting that our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa. Super. 2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

In its opinion dated June 8, 2016, the PCRA court concluded that all of Priest's appellate issues were without merit. Specifically, the court found that: (1) trial counsel was not ineffective for failing to introduce DNA found under the victim's fingernails that did not match Priest's DNA profile or blood type, as the jury's determination would ultimately be based upon the

- 4 -

credibility of the eyewitness identifications and, in any event, the mere presence of DNA from another individual under the victim's fingernails does not serve to exculpate Priest, **see** Trial Court Opinion, 6/8/16, at 7-9; (2) trial counsel was not ineffective for failing to subpoena Priest's cellphone records because PCRA counsel attempted to obtain them and they were not available and the cellular provider advised that, in any event, such records would not pinpoint the location of the user, **see id.** at 15-16; (3) trial counsel was not ineffective for failing to present the victim's toxicology reports to discredit his identification of Priest as his assailant because the same records also noted that the victim was "speaking in clear, full sentences" and "ha[d] full mental status," which could ultimately have had the effect of bolstering the victim's identification in the eyes of the jury, **see id.** at 9-10; and (4) **Miller** is not applicable to the defendant, as he was 20 years old at the time he committed his offense.[4]

We have reviewed the record and the briefs submitted by the parties in this matter and conclude that Judge Mancini thoroughly and correctly

_____

[4] Priest argues that **Miller** prohibits the imposition of a mandatory life sentence in his case because "[w]hile clearly no longer a juvenile, [Priest], at age 20 years old, was barely a legal adult" and his brain was still developing. Brief of Appellant, at 18. However, this Court has previously declined to extend PCRA relief under **Miller** to defendants 18 years of age and older based on the same argument. **See Commonwealth v. Cintora**, 69 A.3d 759, 764 (Pa. Super. 2013) (rejecting "immature brain" argument and holding petitioners older than 18 at time of murder not within ambit of **Miller**).

disposes of the issues Priest raises on appeal. Accordingly, we affirm on the basis of his opinion and instruct the parties to attach a copy in the event of further proceedings in this matter.

Order affirmed. Motion to Strike Appellee's Brief denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2017

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :
                               :
            vs.                :        **No.:  1503 of 2009**
                               :
MARKEZ PRIEST                  :
                               :
                               :

### MEMORANDUM OPINION and ORDER

MANCINI, J.                                    JUNE **8** , 2016

### Facts

The Superior Court of Pennsylvania has summarized the relevant facts as follows:

As of July of 2009, Chalese Jackson maintained an intermittent relationship with [Appellant] and was the mother of his child. On July 8, 2009, Ms. Jackson had informed [Appellant] via telephone that she was ending this relationship because [she] "didn't want to be with him." That night, [Appellant] called Ms. Jackson because he wished to continue the relationship.

In the early hours of July 9, 2009, Ms. Jackson was approached by [Darius] Odom on Todd Street; that night they had planned to meet Kevonna Thomas, with whom Mr. Odom had a relationship, and Jamie Turner. Ms. Jackson and Mr. Odom began walking up Todd Street towards Ms. Jackson's home in order to charge Mr. Odom's cell phone. While walking to Ms. Jackson's home, they were approached by an individual walking towards them. Mr. Odom held his hands up and said "whoa, whoa, whoa;" Ms. Jackson ran away. Ms. Jackson heard a gunshot and looked back; upon doing so, she observed the gunman and Mr. Odom fighting. Ms. Jackson also heard a second gunshot.

At trial (and at previous pre-trial proceedings) Ms. Jackson did not identify the shooter. However, Beaver County Detective Timmie Patrick testified that, during a [police] interview on July 9, 2009, Ms. Jackson did identify [Appellant] as the shooter. [Specifically, he testified as follows on direct examination:]

1

[At that point when] I asked her during the time [of the interview] who is the shooter, you had to see him, do you know the name of the shooter? At that point, Miss Jackson wrote the name Markez Priest, which is indicated down below. She wrote the name, tapped twice real hard, stood up, and started crying and sobbing and began to walk out of the interview room, which was about maybe five to seven yards. She was visibly and physically upset and crying.

Also, in a voluntary statement written during the same interview, Ms. Jackson wrote: "Then somebody or Markez was walking up to us, shot one time."

Following the shooting, Mr. Odom was flown to UPMC Presbyterian, as that facility possesses the nearest Level One Trauma center. [Mr. Odom suffered gunshot wounds to his right arm and the back of his neck.] Four employees of UPMC involved with the treatment of Mr. Odom on July 9, 2009 (Jaclyn Kuzminsky, a certified respiratory therapist, Dr. Brian Bane, an anesthesiologist, Nathan Sullivan, a registered nurse, and Dr. Raquel Forsythe, a trauma surgeon) testified that Mr. Odom said "Markez shot me" immediately prior to being intubated. Furthermore, the trauma bays at UPMC Presbyterian were videotaped for educational purposes; the videotape portrayed Mr. Odom saying the name "Markez" three times, then saying "shot me."

Numerous witnesses testified that they were aware of no other individual in Aliquippa named "Markez." [Mr. Odom died at approximately 10:09 A.M. on July 9, 2009, as a result of his gunshot wounds.]

Commonwealth v. Priest, 18 A.3d 1235, 1237-38 (Pa.Super. 2011).

Procedural History

On September 21, 2009 the Petitioner was charged by Criminal Information with two counts: Criminal Homicide[1] and Firearms not to be Carried without a License.[2] The Petitioner's trial by jury was held the week of April 26, 2010. On April 30, 2010 the jury returned a verdict finding the Petitioner guilty of Murder of the First Degree and the

---

[1] 18 Pa.C.S.A. §2501(a).
[2] 18 Pa.C.S.A. §6106(a)(1).

2

aforementioned firearms offense. On June 29, 2010 he was sentenced to incarceration for life.[3] The Petitioner filed a timely notice of appeal to the Superior Court on July 28, 2010 and the judgment of sentence was affirmed on April 21, 2011. See Commonwealth v. Priest, 18 A.3d 1235 (Pa.Super. 2011).

The Petitioner filed his first *pro se* PCRA on July 5, 2011. Attorney Steven Valsamidis was appointed to represent the Petitioner and filed an Amended PCRA Petition on January 24, 2012. This Petition alleged that Trial Counsel was ineffective for failing to file a post-sentence motion challenging the weight of the evidence.[4] A hearing upon said Petition was held on June 6, 2012. On September 5, 2012 the Court reinstated the Petitioner's right to file post-sentence motions *nunc pro tunc*, specifically permitting the Petitioner to file a challenge to the weight of the evidence. The Petitioner filed his post-sentence motion on September 14, 2012. The Court denied said motion on October 12, 2012, and the Petitioner filed a timely appeal to the Superior Court on October 19, 2012. The Superior Court affirmed on June 20, 2013. See Commonwealth v. Priest, 82 A.3d 466, 1660 WDA 2012 (unpublished memorandum opinion). The Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal on November 20, 2013. See Commonwealth v. Priest, 80 A.3d 776, 342 WAL 2013.

---

[3] As to Count Two, Firearms not to be Carried without a License, the Petitioner was sentenced to incarceration for two to four years, to be served concurrent to the life sentence for homicide.

[4] At the hearing upon this Petition, the Petitioner testified that he had raised additional potential issues with Attorney Valsamidis, who had explained to the Petitioner via letter why he (Attorney Valsamidis) did not believe such issues were meritorious. See Transcript of PCRA Hearing of June 8, 2012 at 49-51.

The Petitioner filed his second *pro se* PCRA petition on April 23, 2014 and an amended *pro se* petition on May 29, 2014. Attorney Sherri Hurst was appointed to represent the Petitioner.

The Petitioner's initial *pro se* petitions raised six issues, which may be paraphrased as follows: (1) the Petitioner challenged the legality of his sentence, citing Miller v. Alabama, 132 S.Ct. 2455 (2012); (2) the Petitioner alleged that trial counsel was ineffective in failing to present DNA and other trace evidence found on the victim; (3) the Petitioner alleged that trial counsel was ineffective in failing to present the victim's blood toxicology report; (4) the Petitioner alleged that trial counsel was ineffective in failing to present the ballistics report; (5) the Petitioner alleged that the trial court erred in admitting a video of the victim receiving treatment at the hospital; and (6) the Petitioner alleged that the prosecution committed misconduct during closing argument.

On November 11, 2014 appointed Counsel filed a "no merit" letter which concluded that all six issues raised were without merit. Appointed counsel further averred that her review of the case did not disclose additional meritorious claims. On November 12, 2014 the Court issued a Preliminary Order providing the Petitioner notice of intent to dismiss his Petition.

On January 8, 2015 the Petitioner filed a written response to the Court's notice of intent to dismiss and a separate "*Nunc Pro Tunc* Motion for Post Conviction Relief". These filings raised issues duplicative of his first petitions and three new grounds for relief: (1) the Petitioner alleged that trial counsel was ineffective in failing to raise a

4

voluntary manslaughter defense; (2) the Petitioner alleged that his sentence was illegal, citing Alleyne v. United States, 133 S.Ct. 2151 (2013) and Commonwealth v. Valentine, 101 A.3d 801 (Pa.Super. 2014); and (3) the Petitioner alleged that trial counsel was ineffective in failing to subpoena cellular telephone records to show the Petitioner's location at the time of the offense.

On February 24, 2015, the Court Ordered that appointed Counsel review the third supplemental issue raised by the Petitioner, regarding the cellular telephone records.[5] On January 11, 2016 Counsel filed a second "no merit" letter which concluded that this claim was also without merit. The Petitioner filed a response to this letter on February 12, 2016, in which he raised claims duplicative of those stated above and one new ground for relief: the discovery of a new alibi witness and/or ineffective assistance of trial counsel in failing to discover and call this witness. On April 8, 2016, pursuant to Pa.R.Crim.Pro. 907(1) the Court provided the Petitioner notice of the Court's intention to dismiss his PCRA Petition without a hearing for the reasons set forth in Counsel's "no merit" letters and the Petitioner filed a written response on April 26, 2016.

> Counsel petitioning to withdraw from PCRA representation must proceed … under *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988). Similar to the *Anders* situation, *Turner/Finley* counsel must review the case zealously. *Turner/Finley* counsel must then submit a "no-merit" letter to the trial court … detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

---

[5] The Court noted in this Order that the first and second supplemental issues raised by the Petitioner were patently frivolous and need not be reviewed by Counsel. The Court shall discuss these issues below.

5

Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed pro se or by new counsel.... [W]here counsel submits a petition and no-merit letter that do satisfy the technical demands of *Turner/Finley*, the court ... must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

Commonwealth v. Wrecks, 931 A.2d 717, 721 (Pa.Super. 2007) (internal citations and quotations omitted).

The Court finds that Counsel has complied with the technical demands of Turner / Finley and has conducted an independent review of the case. For the reasons that follow, the Court finds that the Petitioner's ten claims are without merit and do not entitle him to relief. The Court has paraphrased the Petitioner's arguments for brevity and clarity.

### Opinion

*(1)    Legality of sentence, citing Miller v. Alabama, 132 S.Ct. 2455 (2012)* [6]

The Petitioner argues that his mandatory sentence of incarceration for life without parole violates Eighth and Fourteenth Amendments of the United States Constitution; in support of this argument he cites Miller v. Alabama and related cases. In Miller v. Alabama the United States Supreme Court held as follows:

> *Graham* [Graham v. Florida, 130 S.Ct. 2011(2010)], *Roper* [Roper v. Simmons, 125 S.Ct. 1183 (2005)], and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty **for juveniles**. By requiring that all **children** convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of

---

[6] See *Pro Se* PCRA Petition and Supplemental Memorandum of Law, filed April 23, 2014.

6

proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

132 S.Ct. 2455, 2467 (emphasis added).

The record indicates that the Petitioner was born on December 30, 1988 and the subject offense took place on July 9, 2009. As the Petitioner was twenty (20) years old at the time of the offense, the case of Miller v. Alabama, affords him no relief. There is no binding authority to support the Petitioner's claim that his sentence is otherwise illegal or unconstitutional.

*(2)    Ineffective assistance of Trial Counsel in failing to raise DNA evidence* [7]

The Petitioner avers that there was DNA found under the victim's fingernails and a hair and other trace evidence found on the victim's clothing that did not match the Petitioner's DNA profile or blood type. The Petitioner argues that Trial Counsel was ineffective in failing to present this evidence, as such evidence may show that the victim's assailant was someone other than the Petitioner.

PCRA Counsel concluded that Trial Counsel's failure to elaborate on the lack of a DNA match was a reasonable trial strategy, as the jury's determination would ultimately be based upon the credibility of the victim's identification, Chalese Jackson's prior identification, and the Petitioner's alibi defense.

The standard of review for allegations of ineffective assistance of counsel is clearly defined. In order to be eligible for relief, a petitioner must plead and prove by a

---

[7] See *Pro Se* Amended PCRA Petition, filed May 29, 2014 at ¶ "I".

7

preponderance of the evidence that the conviction and sentence resulted from the following:

> (a)(2)(ii) – Ineffective assistance of counsel which, in the circumstances of the particular case so undermine the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

42 Pa.C.S. §9543(a).

Counsel is presumed to be effective. Commonwealth v. Rios, 920 A.2d 790, 799 (2007). In order to overcome this presumption, the defendant must establish three elements: (1) that the underlying claim has arguable merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Bath, 907 A.2d 619, 622 (Pa.Super. 2006). The defendant's failure to satisfy any prong of this test will cause the entire claim to fail. Commonwealth v. Bridges, 886 A.2d 1127, 1131 (2005). Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interest. Commonwealth v. Howard, 719 A.2d 233, 237 (1998). Nor can a claim of ineffective assistance generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. Id. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Id. If the defendant fails to demonstrate that trial counsel's act or omission adversely affected the outcome of the proceedings, the

8

claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met. Rios, 920 A.2d at 800. Counsel cannot be deemed ineffective for failing to raise a meritless claim. Commonwealth v. Rivera, 108 A.3d 779, 789 (Pa. 2014).

The Court finds that the Petitioner has failed to prove that Trial Counsel's failure to present the DNA and trace evidence adversely affected the outcome of his trial. As stated by PCRA Counsel, the determination for the jury would ultimately be based upon credibility determinations. The evidence cited by the Petitioner would have no impact upon these determinations and such evidence is not exculpatory. See e.g. Commonwealth v. Heilman, 867 A.2d 542, 547 (Pa.Super.2005) ("In DNA as in other areas, an absence of evidence is not evidence of absence."); Commonwealth v. Smith, 889 A.2d 582, 585 (Pa.Super.2005) ("Merely detecting DNA from another individual on the victim's fingernails, in the absence of any evidence as to how and when that DNA was deposited, would not exculpate appellant by pointing to a different assailant.").[8]

*(3)    Ineffective assistance of Trial Counsel in failing to raise the victim's blood toxicology report [9]*

The Petitioner avers that a blood toxicology indicates that the victim's blood alcohol content was 0.126%. The Petitioner argues that Trial Counsel was ineffective in failing to present this evidence, as such evidence would have challenged the reliability of the victim's identification.

---

[8] The cited cases specifically address requests for post-conviction DNA testing under 42 Pa.C.S. §9543.1, which is not at issue in the present case.
[9] See *Pro Se* Amended PCRA Petition, filed May 29, 2014 at ¶ "II".

PCRA Counsel concluded that Trial Counsel's failure to raise the victim's blood toxicology was a reasonable trial strategy, as the report that states that the victim's blood alcohol content was 0.126% further stated that "the patient is speaking in clear, full sentences..." and "[the patient] has full mental status". Had Trial Counsel attempted to attack the victim's identification with his blood alcohol content, the same identification may have been bolstered by the additional comments and therefore Trial Counsel made a reasonable decision to forego this argument.

The Court finds that the Petitioner has failed to prove that Trial Counsel's failure to raise the victim's blood toxicology report adversely affected the outcome of his trial. As stated by PCRA Counsel, the subject report, as a whole, does not impeach the victim's identification of his assailant. Further, the jury was able to view a video of the victim receiving treatment and identifying the Petitioner as his assailant and therefore had the ability to evaluate the victim's credibility.

*(4)    Ineffective assistance of Trial Counsel in failing to raise the inconclusive ballistics Report [10]*

The Petitioner avers that the ballistics report shows that "the bullets recovered from the victim [were] not fired from the same unknown firearm, which indicates more than one assailant was involved in the crime for which Petitioner was convicted..." The Petitioner argues that Trial Counsel was ineffective in failing to present this evidence and cross-examine Trooper Robert Hagins, an expert forensic firearm and toolmark examiner, regarding such evidence.

---

[10] See *Pro Se* Amended PCRA Petition, filed May 29, 2014 at ¶ "III".

10

PCRA Counsel concluded that Trial Counsel's failure to raise the ballistics reports was a reasonable trial strategy, as the reports were inconclusive and would have no relevance to the facts to be determined by the jury. Further, the Petitioner's hypothetical argument of multiple assailants could be confusing and misleading.

The Court finds that the Petitioner has failed to prove that Trial Counsel's failure to raise the ballistics report adversely affected the outcome of his trial. The referenced ballistics report states "Examinations to determine whether Item 8.1 (R-1) and Item 8.2 (R-2) [referencing the two bullets removed from the victim] were discharged from the same unknown firearm were inconclusive due to a lack of sufficient matching individual characteristics." Because the report is inconclusive, and because there is no evidence to support the Petitioner's theory regarding multiple assailants, the Petitioner was not prejudiced by Trial Counsel's failure to raise such evidence.

*(5)     Admission of video of the victim receiving treatment at the hospital* [11]

The Petitioner avers that this Court erred in admitting the video of the victim receiving treatment at the hospital. The Petitioner argues that the probative value of this video was far outweighed by the prejudicial value. The Petitioner also appears to argue that this Court erred in determining that the victim's statements on the video were admissible as a dying declaration.

PCRA Counsel concluded that this matter has been previously litigated and the Court agrees. The Petitioner is not eligible for relief based upon allegations of error that have been previously litigated or waived. See 42 Pa.C.S. §9543. A matter has been

---

[11] See *Pro Se* Amended PCRA Petition, filed May 29, 2014 at ¶ "IV".

11

previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" 42 Pa.C.S. §9544(a)(2). The Petitioner raised these matters on direct appeal and the Superior Court affirmed, holding that this Court did not err in finding that that the video was admissible as a dying declaration and that the prejudicial impact did not outweigh the probative value. Commonwealth v. Priest, 18 A.3d 1235, 1240-42 (Pa.Super. 2011). As review by the Pennsylvania Supreme Court is not "a matter of right", this matter has been previously litigated and the Petitioner is not entitled to relief. See 42 Pa.C.S. §5105(b); see also Commonwealth v. Derk, 913 A.2d 875, 882 n.4 (Pa.Super. 2006).

*(6)     Prosecutorial misconduct during the Commonwealth's closing statement* [12]

So far as this Court is capable of determining, the Petitioner avers that the Commonwealth argued in closing that the victim was "down" when shot the second time though Dr. Smith testified that the victim was below the shooter. The Petitioner further avers that such testimony is inconsistent with that of the eyewitness to the shooting. The Petitioner argues that the Commonwealth's alleged misstatement constitutes prosecutorial misconduct.

PCRA Counsel concluded that the alleged misrepresentation by the prosecution during closing argument, specifically, the doctor's testimony and the position of the victim when he was shot, have no relevance to the issue to be determined by the jury.

Initially, the Court observes that this claim could have been raised at Trial and that the Petitioner did not submit this allegation of error as ineffective assistance of counsel;

---

[12] See *Pro Se* Amended PCRA Petition, filed May 29, 2014 at ¶ "V".

therefore it is waived. See 42 Pa.C.S. §9544(b). Regardless, the Court will address the merits of this allegation under the rubric of ineffective assistance of counsel in failing to object to the Commonwealth's closing argument.

Dr. Smith, an expert forensic pathologist, testified as follows:

A.    ... Now, the other shot, the shot that went into the back of the neck, we could see from that one diagram as I pointed out that shot was coming from above downward, because it ended up down here. So the direction is roughlythis way, so the shot is coming from up here. Well, that is almost impossible if two people are standing facing each other, so the only logical way that shot probably could have occurred is if the victim were below the shooter or if the victim were bending over in a fashion like this and the shot came in this particular manner (indicating).

...

Q.    The second shot came from in front or behind?

A.    Behind, behind and to the right.[13]

The Commonwealth's closing argument included the following statement:

Then what happens? Does Markez run away to leave him there to die? No. Markez finishes the job. What do we know about how that job was finished? Darius wasn't upright. Doc Smith testified Darius was down. Not only was he down, but that shot came from behind him.[14]

"[P]rosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." Commonwealth v. Culver, 51 A.3d 866 (Pa.Super. 2012). The Court finds that the challenged statements are a reasonable inference from the evidence presented. The jury was also properly instructed that counsels' arguments were not evidence and that they were to rely upon their own recollection of the evidence.[15] As such, the Court finds that there is no prosecutorial

---

[13] Trial Transcript, April 28, 2010 at 760.

[14] Trial Transcript, April 29, 2010 at 871.

[15] Trial Transcript, April 29, 2010 at 858.

13

misconduct and that Trial Counsel was not ineffective for failing to object to the challenged statement.

*(7) Ineffective assistance of Trial Counsel in failing to raise a defense of voluntary manslaughter*[16]

The Petitioner avers that Trial Counsel was ineffective in failing to present a defense of voluntary manslaughter, in that the Petitioner killed the victim in the heat of passion following the serious provocation of seeing the victim with the mother of his (the Petitioner's) child.

The Court did not request that PCRA Counsel review this claim because it is clearly without merit. The Petitioner testified at trial that he did not shoot the victim.[17] The Petitioner may not now allege that he committed perjury at trial and that he actually shot the victim under heat of passion. Further, over the Commonwealth's objection, the Court instructed the jury as to voluntary manslaughter.[18]

*(8) Legality of sentence, citing <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013) and <u>Commonwealth v. Valentine</u>, 101 A.3d 801 (Pa.Super. 2014)*[19]

The Petitioner argues that his sentence is unconstitutional under <u>Alleyene</u> and Pennsylvania caselaw applying <u>Alleyne</u>.

The Court did not request that PCRA Counsel review this claim because it is clearly without merit. <u>Alleyne</u> held that facts leading to an increase in a mandatory minimum sentence are elements of the crime and must be presented to a jury and proven beyond a reasonable doubt. 133 S.Ct. at 2155 (2013). <u>Valentine</u> held that two

---

[16] *Pro Se Nunc Pro Tunc* PCRA / Response to Court's Notice of Intent to Dismiss, filed January 8, 2015 at ¶ "IV".
[17] Trial Transcript, April 29, 2010 at 829-34.
[18] Trial Transcript, April 20, 2010 at 850-54 & 887-97.
[19] *Pro Se Nunc Pro Tunc* PCRA, filed January 8, 2015.

14

Pennsylvania Statutes requiring mandatory minimum sentences (42 Pa.C.S. §9712 and §9713) were unconstitutional in light of the Alleyne decision. 101 A.3d at 812 (Pa.Super. 2014). There is no legal application of the above-referenced cases to the mandatory sentence imposed in the present case as all elements of First Degree Murder were proven to the jury beyond a reasonable doubt.

*(9) Ineffective assistance of Trial Counsel in failing to subpoena cellular telephone records to show the Petitioner's location at the time of the offense[20]*

The Petitioner argues that Trial Counsel was ineffective in failing to subpoena cellular telephone records from the time of the homicide, which the Petitioner avers would show his location and support his alibi defense.

PCRA Counsel avers that she made multiple attempts to obtain cell tower records, however such information from the time of the homicide is no longer available. Counsel further avers that records received from the applicable wireless provider contained strict limitations upon their applicability, specifically stating that the information sought would only identify the cell tower that connected the call and not the location of the user and that the cell tower that connected the call may not be the nearest tower to the user for several reasons, such as topography and weather conditions.

As stated above, "a PCRA petitioner advancing an ineffectiveness claim must prove: (1) the claim has arguable merit; (2) counsel lacked any reasonable basis for his action or omission; and (3) petitioner was prejudiced by counsel's conduct." Commonwealth v. Gwynn, 943 A.2d 940, 945 (Pa. 2008). Trial Counsel is presumed

---

[20] *Pro Se Nunc Pro Tunc* PCRA / Response to Court's Notice of Intent to Dismiss, filed January 8, 2015 at ¶ "II".

effective and it is the defendant's burden to prove the elements of ineffectiveness. See Commonwealth v. Fisher, 741 A.2d 1234, 1245 (Pa. 1999). See also Commonwealth v. Howard, 749 A.2d 941, 949 (Pa.Super. 2000) ("When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, **he must prove by a preponderance of the evidence** that his conviction or sentence resulted from ineffective assistance of counsel which in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.").

Non-existent cellular telephone records cannot sustain the Petitioner's burden of proof. Any alleged prejudice from Trial Counsel's failure to obtain such records is pure speculation.

*(10) Discovery of a new alibi witness / Ineffective assistance of counsel in failing to call a known witness*[21]

The Petitioner avers that he has identified a new alibi witness and further (and inconsistently) avers that Trial Counsel was aware of this witness and provided ineffective assistance of counsel in failing to call the witness at Trial. The Petitioner does not identify the witness or the testimony that she would have been able to provide.

"Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible." 42 Pa.C.S.

---

[21] *Pro Se* Response to Counsel's "no merit" letter, filed February 12, 2016 at ¶ "V".

16

§9545(d)(1). <u>See also</u> Pa.R.Crim.Pro. 902(A)(15). The Petitioner's exceedingly vague (and contradictory) statement regarding the existence of this unnamed witness does not afford him relief.

An appropriate Order follows:

# IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
## PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :
                                         :

        vs.                        :       **No.:  1503 of 2009**

                                           :

MARKEZ PRIEST       .         :

                                           :

## ORDER

AND NOW, this _8th_ day of June, 2016, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby ORDERED that the that the Petition for Relief under the Post-Conviction Relief Act in the above-captioned matter is DISMISSED without Hearing. The Petitioner had been provided the requisite notice of the Court's intention to dismiss his petition without a hearing and has filed a written response.

It is further ORDERED that Attorney Sherri Hurst is granted leave to withdraw from further representation.

The Petitioner is hereby advised of his right to appeal this Order to the Superior Court of Pennsylvania within thirty (30) days of this date.

The Clerk of Courts shall send a copy of this Order to the Petitioner by certified mail, return receipt requested, in accordance with Pa.R.Crim.P. 907(4).

BY THE COURT,

_____
RICHARD MANCINI
JUDGE

18