J-S66006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GABRIEL DOMONIC LEE, | |
| Appellant | No. 725 MDA 2014 |

Appeal from the Judgment of Sentence Entered September 11, 2013
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001914-2011

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED OCTOBER 22, 2014**

Appellant, Gabriel Domonic Lee, appeals *nunc pro tunc* from the judgment of sentence of 6-12 years' incarceration, imposed after he was convicted of selling 1.4 grams of cocaine to a police informant. Appellant contends that the verdict was against the weight of the evidence. After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

The Commonwealth first presented testimony from Dustin Lamir. Lamir was working as a confidential informant for the Franklin County Drug Task Force. On that date, Lamir purchased cocaine from [Appellant], Gabriel Lee. He had known Lee at least one week prior to the transaction. Lamir first met Lee at a bar in Greencastle, where he lamented that he was new in town and did not know where he could "get anything." To this, Lee replied that anytime you need something, give me a call." Lee identified himself as "G," the name he went by on the street. Lamir then informed Detective Jason Taylor of his newly acquired source in preparation for a deal to be set up.

Lamir testified that he attempted to contact Lee by phone and text message, but received no reply. Lamir then ran into Lee again, and their business relationship took off from there. On October 3, 2011, Lamir called Lee and requested "an eight ball of cocaine." The two men discussed the price of that commodity, which came out to $170.00. Lee instructed Lamir to contact him when he was in the area.

Lamir met with Detective Taylor, where he was searched prior to the meeting with Lee. Lamir testified that his pockets were pulled inside out, he took his shoes off and Detective Taylor shook them, and he was patted down. Detective Taylor then provided Lamir with $170.00. Lamir called Lee, who told him to meet at Papa John's, located approximately 80-100 yards from Lee's residence, and is within sight of that residence. While Lamir was waiting at Papa John's, he attempted to call Lee at least three times but got no answer. Lee and his friend Mike Zolla then approached the Papa John's. Lee carried a dog with him. Lamir walked toward the two men and indicated that he had the money. Lamir testified that he pulled the money out and "Lee spit the cocaine from his mouth and we made the exchange." The cocaine was in a small plastic bag. After Lee handed the cocaine to Lamir, the three men proceeded to walk across the street towards the Papa John's. Lamir stated that the transaction took approximately two minutes. After this encounter, Lee and Zolla walked up an alley next to the pizza shop. Lamir returned to Detective Taylor's vehicle, where he turned over the cocaine purchased from Lee.

The Commonwealth next presented testimony from Officer Bryan Chappell of the Waynesboro Police Department. Officer Chappell has worked in law enforcement for thirteen years. In October of 2011, Officer Chappell was working as a detective with the Franklin County Drug Task Force. During his time there, he conducted approximately 50 drug investigations. On October 3, 2011, Officer Chappell assisted with the controlled drug buy in this case, setting up surveillance in a large SUV on South Carlisle Street. Officer Chappell watched Lamir walk South on S. Carlisle Street. He testified that he saw a golden car parked North on S. Carlisle Street against the curb. Out of that car emerged Lee and a second male, who was identified as Mike Zolla. Officer Chappell watched Lamir as he met with Lee and Zolla. Lee had a dog in his hand. Lee then went into his residence while Zolla remained outside with Lamir. Officer Chappell was approximately a block and a half away from the

meeting, taking photographs with his camera. He did not witness a "hand-to-hand" transaction between Lee and Lamir. Officer Chappell stated that he was 100 percent positive that he saw Lee meet with Lamir on October 3, 2011 for the transaction.

The Commonwealth then presented testimony from Detective Jason Taylor, an investigator with the Franklin County Drug Task Force. Detective Taylor has worked in law enforcement for sixteen years, including over 1,000 drug investigations. He briefly described the role confidential informants play in drug investigations, explaining that they are involved in over 90 percent of those investigations. Throughout his career, Detective Taylor has been involved with approximately 100 confidential informants. He stated that Lamir became an informant in the summer of 2008 or 2009.

Detective Taylor stated that the Task Force arranged a controlled cocaine purchase on October 3, 2011. Detective Taylor previously told Lamir to contact Lee and arrange the transaction. The purchase was set for around 3:30 p.m. Upon meeting Lamir, Detective Taylor searched him for money or contraband, after which he provided Lamir with the $170.00 purchase money. The transaction was to take place in the area near the Papa John's on S. Carlisle Street, which was near Lee's residence. Lamir was equipped with a wire under his clothing.[1] Detective Taylor drove Lamir to the location, and watched him walk South down the street to meet Lee. He stated that the location was a little more than half a block from Lee's residence, which was in sight of the Papa John's. Detective Taylor was two blocks down the street from the transaction.

[1] Detective Taylor testified that the quality of the recording was poor and it was difficult to hear the conversation between Lamir, Lee, and Zolla.

After the drug buy, Lamir returned to Detective Taylor's vehicle and turned over the cocaine. Lamir stated that he purchased the drugs from Lee. Detective Taylor searched Lamir again and found no money or contraband on his person. The substance purchased was in a small plastic bag, in a white powdery form, which was later confirmed to be cocaine.[2] Detective Taylor was later recalled to testify by [Appellant], where he focused on the Task Force's procedure regarding the money used in controlled drug buys, and for weighing the drugs recovered. Detective Taylor testified that, based on his

experience in drug investigations, he believed that Lee did have the ability to hold a bag of cocaine in his mouth while he spoke to an informant.

   [2] The Commonwealth also presented testimony from Robert Wagner, a retired Pennsylvania State Police forensic scientist. Mr. Wagner discussed the procedures for testing to determine if certain substances are drugs. He tested the substance purchased from the transaction in this case, and found the substance to be 1.4 grams of cocaine.

The Court also heard testimony from [Appellant], Gabriel Lee. Lee stated that on October 3, 2011, he left his cell phone in Hagerstown, Maryland. Lee presented conflicting testimony regarding his trip to Hagerstown.[3] He testified that upon his return from Hagerstown, he found his friend Mike Zolla standing outside his residence. He stated that he was unaware that Lamir was on his way to meet him, and denied speaking to him that day. When he went inside his home, his fiancé asked him to take their dog out. M. Lee stated that when he came out of his house, he saw Lamir and Zolla talking, but "thought nothing of it" because the two gentlemen were friends. Lee stated that if Lamir had purchased drugs, it wasn't from him but from Zolla. Lee maintained that it was not his phone that Lamir called, and that he never sold Lamir any drugs.

   [3] For example, on cross-examination, he stated that he and Zolla went to Hagerstown together to visit his family. Lee then stated that Zolla knew people in Hagerstown. He later stated that someone dropped him and Zolla off at Lee's residence after going to Hagerstown.

Trial Court Opinion (TCO), 6/24/14, at 3-6 (citations omitted).

The police filed a criminal complaint on October 7, 2011. On November 18, 2011, the Commonwealth filed a criminal information charging Appellant with delivery of a controlled substance (cocaine), 35 P.S. § 780-113(a)(30). Appellant was subsequently tried at a non-jury trial held on August 13, 2013, where he represented himself *pro se* with the assistance of stand-by counsel. The trial court found Appellant guilty the

same day. On September 11, 2013, Appellant was sentenced to a term of 6-12 years' incarceration, imposed consecutively to a sentence received in an unrelated case.

Appellant subsequently requested the appointment of counsel for the filing of post-sentence motions and a direct appeal; however, that attorney failed to file either on Appellant's behalf. Consequently, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc* and appointed new counsel by order dated April 8, 2014. That order did not expressly reinstate Appellant's post-sentence motion rights. Appellant then filed a timely notice of appeal on April 28, 2014. Appellant also filed a timely Pa.R.A.P. 1925(b) statement on May 16, 2014. The trial court issued its Rule 1925(a) opinion on June 24, 2014.

Appellant now presents the following question for our review:

> Did the trial court abuse its discretion in failing to find that the verdict [was] against the weight of the evidence in that the only evidence establishing that the drugs came from … Appellant[,] and not Michael Zolla[,] was the testimony of the [c]onfidential [i]nformant (CI)[,] despite an abundance of evidence and lack of evidence to the contrary?

Appellant's Brief at 8.

It is axiomatic that:

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; **Commonwealth v. Priest**, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. **Commonwealth v. Sherwood**, 603 Pa. 92, 982 A.2d 483, 494 (2009).

- 5 -

*Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012).

Instantly, Appellant did not file a post-sentence motion preserving his claim that the verdict was against the weight of the evidence.[1] Consequently, the issue has been waived. *Lofton*, 57 A.3d at 1273.

_____

[1] Appellant acknowledges that this claim was not preserved in a post-sentence motion. Appellant's Brief at 12 n.1. Appellant contacted the trial court to confirm that the April 8, 2014 order reinstating his appeal rights did not include reinstatement of his right to file post-sentence motions, despite his desire to file such motions. Appellant argues that we should entertain the claim because of this, and because the trial court addressed his weight claim in its Rule 1925(a) opinion. Unfortunately, this is not possible. "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Furthermore, "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 753. Here, the trial court never exercised its discretion because it never ruled on a properly raised weight-of-the-evidence claim. Thus, this Court does not have a discretionary act to review.

The trial court does not indicate, nor can we fathom, why it did not reinstate Appellant's post-sentence motion rights when it reinstated his direct appeal rights, despite having found that Appellant was effectively abandoned by his initial appellate counsel after that attorney "admitted that she failed to file timely post-sentence motions or an appeal on behalf of her client, resulting in a waiver of [Appellant]'s right to file an appeal." TCO, at 2. However, the issue of the trial court's failure to reinstate Appellant's right to file post-sentence motions was not challenged in an appeal from the order reinstating Appellant's direct appeal rights, and is not the subject of the instant appeal.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2014