J-S46023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DALE LEE TOOT, | |
| Appellant | No. 247 MDA 2017 |

Appeal from the Judgment of Sentence January 10, 2017
In the Court of Common Pleas of Adams County
Criminal Division at No(s): CP-01-CR-0000674-2016

BEFORE:  BOWES, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 29, 2017**

Appellant, Dale Lee Toot, appeals from the judgment of sentence entered on January 10, 2017, following his bench trial convictions for driving under the influence of alcohol (DUI) (general impairment - incapable of safe driving), DUI (general impairment - blood alcohol content (BAC) between .08% and .10%), and driving while operating privilege is suspended or revoked.[1]  We affirm.

The trial court summarized the facts of this case as follows:

On February 5, 2016, at approximately 12:48 a.m., Officer [Anthony] Gilberto [an officer with the Littlestown Police Department] was on duty, in full uniform, in a marked police vehicle when he observed a blue pick-up truck pull from Patrick Avenue eastbound on to West King Street in the Borough of

_____

[1] 75 Pa.C.S.A. § 3802(a)(1), 75 Pa.C.S.A. § 3802(a)(2), and 75 Pa.C.S.A. § 1543, respectively.

_____

* Former Justice specially assigned to the Superior Court.

Littlestown. The blue pick-up truck did not appear to stop at the posted stop sign. Within minutes[,] Officer Gilberto observed what appeared to be the same blue pick-up truck turn right from Charles Street onto South Queen Street in Littlestown Borough. He then observed the pick-up truck continue [s]outhbound on South Queen Street. Officer Gilberto was directly behind the blue pick-up truck on South Queen Street. Officer Gilberto observed the blue pick-up truck slow to an almost complete stop at the intersection of South Queen Street and Boyer Street. Officer Gilberto then observed the blue pick-up truck activate its right turn signal and make a right turn onto Boyer Street at an unusually slow rate of speed. Officer Gilberto followed the blue pick-up truck onto Boyer Street and observed the blue pick-up truck make a right turn onto M Street.

Officer Gilberto lost sight of the blue pick-up truck for "less than two seconds" and made a right turn onto M Street. Officer Gilberto observed a blue Ford pick-up truck pull to the curb in the 200 block of M Street. Officer Gilberto observed a male occupant step out from the driver's door of the pick-up truck, look in the direction of the police vehicle, immediately get back into the pick-up truck, shut the door and lay down on the floor of the pick-up truck. Officer Gilberto then proceeded [n]orthbound on M Street past the pick-up truck and stopped approximately fifty feet ahead of the pick-up truck. Officer Gilberto observed the driver sit back up, look in the direction of his police vehicle and then quickly lay back down. Officer Gilberto backed the police vehicle down M Street to the rear of the blue Ford pick-up truck. Officer Gilberto never activated his lights or sirens. Officer Gilberto checked the registration of the pick-up truck and observed that it was registered to a Gary Rosenberry, Sr. Officer Gilberto knows Gary Rosenberry, Sr., and the driver of the blue pick-up truck was not Gary Rosenberry, Sr.

Officer Gilberto exited his patrol vehicle, approached the parked pick-up truck and observed a male (later identified as [Appellant]) laying [*sic*] on the floor of the pick-up truck. There were no other occupants in the vehicle. Officer Gilberto knocked on the driver's side window. [Appellant] did not move or respond. Officer Gilberto knocked several more times, stated "I see you on the floor" and asked [Appellant] to sit up. [Appellant] did not move or respond to Officer Gilberto. Officer Gilberto then opened the driver's door and asked [Appellant] what he was doing. [Appellant] did not respond. Officer

Gilberto asked[,] "Sir, are you okay?" The driver then got off the floor and advised "I'm fine. I'm fine."

While interacting with [Appellant], Officer Gilberto observed [Appellant's] face was flushed, his eyes were red, and his movements and speech were slow. Officer Gilberto also detected a strong odor of alcoholic beverage coming from [Appellant's] breath. [Appellant's] responses concerning the ownership of the pick-up truck were deceptive and unclear. [Appellant] advised Officer Gilberto that he had been shooting pool at the North Street Tavern in Hanover and that he had "two beers." [Appellant] later advised that he had three "Bud Lights." When [Appellant] exited the pick-up truck his movements were uncoordinated and slow. At Officer Gilberto's direction, [Appellant] submitted to standard field sobriety tests (SFST). In Officer Gilberto's opinion, [Appellant] did not follow proper instructions concerning the SFST tests, and [Appellant] showed signs of impairment. At Officer Gilberto's direction, [Appellant] agreed to take a [portable breathalyzer test (PBT)]. [Appellant] did not follow Officer Gilberto's instructions and appeared to be "sucking in" instead of "blowing" during the PBT test. [Appellant] did this approximately four times. Officer Gilberto was unable to obtain a result.

Based on [] Officer Gilberto's observations of [Appellant], Officer Gilberto placed [Appellant] under arrest for DUI, handcuffed him and placed him in the back of the police vehicle. Officer Gilberto transported [Appellant] to Gettysburg Hospital. While driving to Gettysburg Hospital, Officer Gilberto orally advised [Appellant] of his **Miranda**[2] warnings. Officer Gilberto arrived at Gettysburg Hospital at approximately 1:22 a.m. While [Appellant] was in custody and handcuffed, Officer Gilberto asked "are you willing to submit to a chemical test of your blood?" [Appellant] advised he would. Officer Gilberto escorted Appellant into Gettysburg Hospital [] at 1:40 a.m. [Appellant] consented and blood was drawn from [Appellant]. Officer Gilberto never read [a] DL-26 form to [Appellant] nor did Officer Gilberto have [Appellant] sign [a] DL-26 form. Officer Gilberto testified he does not read the DL-26 form to a DUI [d]efendant unless a DUI [d]efendant

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

> refuses to submit to a blood draw. Analysis of [Appellant's] blood by NMS Labs revealed a [BAC] of .102.

Trial Court Opinion, 9/14/2016, at 1-5 (unpaginated) (numbered paragraphs omitted).

The Commonwealth charged Appellant with the aforementioned charges.[3] On July 19, 2016, Appellant filed a motion to suppress. The trial court held a suppression hearing on August 25, 2016, wherein the Commonwealth presented the testimony of Officer Gilberto. On September 14, 2016, the trial court issued an opinion and order denying suppression. The trial court held a bench trial on January 10, 2017 and convicted Appellant of DUI (general impairment – incapable of safe driving), DUI (general impairment – blood alcohol content (BAC) between .08% and .10%), and driving while operating privilege is suspended or revoked. On January 10, 2017, after Appellant waived a presentence investigation, the trial court sentenced Appellant to six months of probation for DUI (general impairment – incapable of safe driving). The other DUI conviction merged for sentencing purposes. The trial court rendered no further penalty on the careless driving summary offense. This timely appeal ensued.[4]

_____

[3] The Commonwealth also charged Appellant with DUI (high rate of alcohol), 75 Pa.C.S.A. § 3802(b). However, the trial court found him not guilty of this offense.

[4] On January 31, 2017, Appellant filed a notice of appeal. On February 2, 2017, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days of the order. Appellant filed an untimely Rule 1925(b)
*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issue for our review:

I. Whether the suppression court properly denied Appellant's challenge to the sufficiency of probable cause to arrest him for DUI[?]

Appellant's Brief at 5 (complete capitalization omitted).

Appellant claims that the suppression court erred and abused its discretion by denying suppression, because the police lacked probable cause to arrest him. *Id.* at 10-16. More specifically, Appellant contends that, "[a]t no time did Officer Gilberto see who was driving the vehicle in question, or even the number of occupants." *Id.* at 11. Appellant claims that the trial court precluded him from cross-examining Officer Gilberto regarding the "locations of the streets in question, their location to each other, and their distances from each other[,]" because "the evidence would have shown not only did [Officer Gilberto] lose sight of the vehicle, but that he lost sight of the vehicle for a substantial period of time." *Id.* at 13. Appellant also contends that the trial court denied Appellant the ability to refresh Officer Gilberto's memory with the affidavit of probable cause and his police report and "[h]ad Appellant been permitted to cross-examine [Officer]

*(Footnote Continued)* ──────────────

statement on March 2, 2017. The trial court overlooked the late filing and filed an opinion pursuant to Pa.R.A.P. 1925(a) on March 13, 2017, relying on its prior opinion denying suppression entered on September 14, 2016. Because the trial court overlooked the untimely nature of Appellant's submission and addressed the issue currently on appeal, we will address the merits of the issue presented. *See Commonwealth v. Priest*, 18 A.3d 1235, 1238 n.5 (Pa. Super. 2011) (citations omitted).

Gilberto on his previous statements, it would have shown the court that [Officer] Gilberto, according to his written reports, never saw a 'male occupant exit the vehicle.'" *Id.* at 14. He claims that Officer Gilberto's "written statements would have also shown that [Officer] Gilberto did not become 'suspicious' of anything, regarding the vehicle in question, until he passed the already parked car and saw, in his rear-view mirror, a head pop up." *Id.* Appellant, in sum, maintains that because the trial court improperly excluded cross-examinations regarding the suspect's connection to the alleged crimes, he was erroneously denied an opportunity to dispute the identity of the individual who operated the pick-up truck while impaired.

Our Supreme Court determined

> that our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

Regarding probable cause to arrest, our Supreme Court has held:

> There is, of course, no doubt that the issuing authority must have probable cause to believe a suspect guilty of a crime

charged against him before [effectuating] his arrest. This is ancient law and basic to our concept of freedom. In determining whether probable cause exists, we apply a totality of the circumstances test. Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity.

\* \* \*

In reviewing whether probable cause exists, we afford deference to a [trial court's] finding of probable cause. Finally, we note that the fact that other inferences could be drawn does not demonstrate that the inference that was drawn by the police [] was unreasonable.

***Commonwealth v. Burno***, 154 A.3d 764, 781 (Pa. 2017) (internal

citations, original brackets, and quotations omitted).

Here, the trial court determined:

Under the totality of the circumstances, Officer Gilberto had probable cause to arrest [Appellant] for DUI, including probable cause to believe [Appellant] was driving the blue pick-up truck. Officer Gilberto observed the pick-up truck turn onto South Queen Street. Officer Gilberto maintained visual contact with the pick-up truck except for a period of less than two seconds when the pick-up truck traveled from Boyer Street onto M Street. Officer Gilberto observed the pick-up truck pull to the curb on M Street. Officer Gilberto never observed any other individual exit or leave the area of the pick-up truck. When Officer Gilberto approached the pick-up truck, the only occupant of the pick-up truck was [Appellant], who was suspiciously laying [*sic*] on the floor of the pick-up truck. Officer Gilberto clearly had probable cause to believe [Appellant] was operating the pick-up truck.

Trial Court Opinion, 9/14/2016, at 7-8 (unpaginated).

Upon review of the record, we agree with the trial court's assessment that the police had probable cause to arrest Appellant and, therefore, the trial court did not abuse its discretion in denying suppression. At the suppression hearing, Officer Gilberto admitted that he did not see Appellant driving the car. N.T., 8/25/2016, at 47. However, Officer Gilberto testified that the blue pick-up truck he was following was "very distinctive looking." *Id.* at 12. Officer Gilberto testified that he only lost sight of the vehicle for "less than two seconds." *Id.* at 59. Thus, we reject Appellant's suggestion that it was unclear how long Officer Gilberto lost visual contact with the vehicle in question. Defense counsel also sought to have Officer Gilberto draw a diagram of the streets at issue herein; however, the trial court prohibited it, because there was no dispute that the police did not institute a traffic stop in this case. *Id.* at 34. Thus, such cross-examination regarding precise distances and locations of the streets traveled was irrelevant as to whether there was probable cause to arrest Appellant for DUI. However, the trial court did allow Appellant to cross-examine Officer Gilberto regarding his account of events leading up to Appellant's arrest, including following the blue pick-up truck. *Id.* at 35-40. Officer Gilberto testified that he saw Appellant get out of the vehicle from the driver's side, look back at the marked police car, and then jump back in and hide on the floor of the truck. *Id.* at 15, 58. Officer Gilberto did not observe anyone else in the vehicle or in the area around the vehicle when he reestablished contact after losing the vehicle for less than two seconds. *Id.* at 58. Officer Gilberto identified

Appellant in court. *Id.* at 18. Finally, we note that Officer Gilberto testified that Appellant admitted that he drove past his ex-girlfriend's house after leaving the North Street Tavern, and just prior to this interaction with police. *Id.* at 59-60. Based upon all of the foregoing, we conclude that the facts and circumstances within Officer Gilberto's knowledge were sufficient to warrant a person of reasonable caution to believe that Appellant was driving the blue pick-up truck.[5] Hence, we affirm the trial court's denial of suppression.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2017

_____

[5] Because Appellant does not challenge the trial court's determination that Officer Gilberto's observations provided probable cause to believe that Appellant was intoxicated, we need not address that aspect of the case.